Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
Meghan E. George (SBN 274525)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21031 Ventura Blvd, Suite 340
Woodland Hills, CA 91364
Phone: 323-306-4234
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
mgeorge@toddflaw.com
*Attorneys for Plaintiffs, and all other similarly
situated*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARISHA BYARS and SONYA VALENZUELA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>    vs.<br><br>WAL-MART.COM USA, LLC; and DOES 1 through 10, inclusive, and each of them,<br><br>Defendants. | Case No. 3:23-CV-04315-agt<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF:**<br><br>**(1) CALIFORNIA PENAL CODE § 631 [CLASS CLAIM];**<br>**(2) CALIOFRNIA PENAL CODE § 632 [CLASS CLAIM];**<br>**(3) CAL. BUS. & PROF. CODE § 17200, *et seq.***<br>**(4) THE WIRETAP ACT, 18 U.S.C. § 2510, *et seq.***<br><br>**DEMAND FOR JURY TRIAL** |

1.    ARISHA BYARS and SONYA VALENZUELA ("Plaintiffs") bring this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of WAL-MART.COM USA, LLC ("Defendant"), their related entities, subsidiaries and agents in

1

**FIRST AMENDED CLASS ACTION COMPLAINT**

knowingly, and/or willfully employing and/or causing to be employed certain equipment in order to record communications with Plaintiffs without the knowledge or consent of Plaintiffs, in violation of California Penal Code §§ 630 *et seq.*, thereby invading Plaintiffs' privacy. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

2.     California Penal Code § 631(a) prohibits persons from, by means of any machine, instrument, or contrivance, or in any other manner, intentionally tapping, or making any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or willfully and without the consent of all parties to the communication, or in any unauthorized manner, reading, or attempting to read, or learning the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within California; or communicating in any way, any information so obtained.

3.     Plaintiffs allege that despite California's prohibition of such "wiretapping," Defendant continues to violate Penal Code § 631(a) by impermissibly recording and allowing third parties to eavesdrop on Plaintiffs and others similarly situated who visit Defendant's website and utilize the "chat" feature, without their knowledge or consent.  Plaintiffs further allege that Defendant's conduct, described herein, constitutes violations of the federal Wiretap Act.

4.     Additionally, by utilizing such wiretaps to record the conversations between Plaintiffs and putative Class Members on the one hand, and Defendant on the other, without their prior consent, Plaintiffs allege that Defendant has violated California Penal Code § 632 which prohibits the nonconsensual recording of confidential communications.

**FIRST AMENDED CLASS ACTION COMPLAINT**

## JURISDICTION AND VENUE

5.    This Court has personal jurisdiction over Defendant.  Defendant WAL-MART.COM USA, LLC conducted business within the State of California, has purposely availed itself of the benefits and protections of the State of California, and/or has sufficient contacts with this State such that maintenance of this action in this locale would be consistent with traditional notions of fair play and substantial justice.

6.    Venue is proper in the Northern District of California because this action was originally filed in the California Superior Court of the County of San Mateo, and was removed to this Court by Defendant.  The County of San Mateo is located within this judicial district.  Moreover, a substantial part of the events giving rise to Plaintiffs' causes of action occurred within this judicial district, and Defendant maintains its principal offices in this judicial district.

## PARTIES

7.    Plaintiff ARISHA BYARS ("BYARS") is, and at all times mentioned herein was, a natural individual residing in San Bernardino County, California.

8.    Plaintiff SONYA VALENZUELA ("VALENZUELA") is, and at all times mentioned herein was, a natural individual residing in Riverside County, California.

9.    Plaintiffs are informed and believe, and thereon allege, that Defendant is, and at all times mentioned herein was, a California limited liability company. Plaintiffs allege that at all times relevant herein, Defendant conducted business in the State of California and in the County of San Mateo.

10.    The above named Defendant, and its subsidiaries and agents, are collectively referred to as "Defendants." The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 10, inclusive, are currently unknown to Plaintiffs, who therefore sue such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible

for the unlawful acts alleged herein. Plaintiffs will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

11.    Plaintiffs are informed and believe that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants. Plaintiffs are informed and believe that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

## FACTUAL ALLEGATIONS

### Background

12.    Defendant utilizes an automated chat system on its website to assist consumers with various support and customer service-related concerns.

13.    In order to access this chat system, website users must first register for an account on Defendant's website by providing an email address, first and last name, and setting up a password.

14.    Upon accessing the chat system, a user is greeted with a message that says "Hi [name], I'm Walmart's automated support assistant. What can I help you with?"

15.    The user is then presented with four options to select from in order to direct the chat system to the correct support topics: "My order," "Return or refund," "Billing or charges," or "Something else."

16.    Alternatively, a user may type a message directly into the chat box for the automated system to interpret.

17.    Depending on the selections inputted by a user, the chat system will either connect a user with a customer support representative, or provide automated responses to questions that can be answered without the assistance of a live representative.

18.     Defendant records every input a user makes into this chat system, in addition to other personal identifying information ("PII").  This includes not only inputs made to the automated system, but also inputs made by a user when engaging with a live customer support representative through the chat system.

19.     More specifically, rather than keeping all of the chat transmissions on its own servers, Defendant routes all of the communications made in its chat system to a chat bot created using Microsoft's Bot Framework platform, and hosted on Microsoft Azure, in real time.

20.     Microsoft's Bot Framework platform is primarily used to build customer-facing chat bots.  It utilizes artificial intelligence models developed by Microsoft to analyze natural language inputs and provide appropriate responses. Bots created using the Bot Framework platform are hosted on Microsoft Azure, which is a cloud computing platform.

21.     Defendant hired Microsoft to operate its automated chat system, through Bot Framework and Microsoft Azure, and to collect data on users of Defendant's automated chat system.

22.     To that end, Defendant embedded a bot created using Microsoft's Bot Framework platform and hosted on Microsoft Azure into its own website. Defendant did so by creating what is called a "direct line" that connects its website to Microsoft Azure and the chat bot.  A "direct line" is a communication channel that allows a chat bot hosted on Microsoft Azure to communicate with a website— in this case, Walmart.com.  Such a "direct line" cannot be created by Microsoft on its own, but instead must be created by the owner of the website—in this case, Defendant.

23.      Defendant redirected the inputs made by users, in real time, from Defendant's website to Microsoft Azure through this "direct line."

24.     At Defendant's direction, Microsoft then records the content of the messages exchanged in the chat system, the PII of the user—such as name, and IP

**FIRST AMENDED CLASS ACTION COMPLAINT**

address—and other unknown data on its own Azure servers for processing and analysis. This raw data is available to Defendant through Microsoft Azure because it is at Defendant's direction, and primarily for Defendant's own use, that Microsoft collects such raw data.

25. Microsoft, after storing and compiling such user data, analyzes the content of the chat messages in order to determine what automated response—if any—Defendant's automated chat system should provide. This automated response is determined by the chat bot created using Microsoft's Bot Framework platform, which operates pursuant to parameters provided by Defendant.

26. Once the chat bot determines the appropriate response to a user's input, that response is communicated back from Microsoft's Azure servers to Defendant's website through the "direct line."

27. The only reason that Microsoft is able to do any of this is because Defendant created the "direct line" between its website and Microsoft Azure. Had Defendant not done so, Microsoft would never receive any data whatsoever. Defendant, thus, enabled Microsoft to record, compile, and analyze the communications of website users.

28. On information and belief, Defendant also utilizes the Microsoft Azure platform to analyze and aggregate consumer data which is, in part, collected through Defendant's chat system, as described above.

29. Such analysis, which is conducted by Microsoft at Defendant's direction, includes developing consumer data metrics related to the conversations recorded from Defendant's chat system—including conversations with a live agent through the chat system. This data can be used to understand what customers want, to increase sales, fix inefficiencies, and improve customer experiences.

30. Defendant also uses this aggregated consumer data to request reports from third-party marketers, such as AppNexus and RapLeaf, based on a user's PII.

31.    These reports enable Defendant to see consumers' online browsing behavior across various platforms, such as Facebook and Yahoo, for example, and tailor the ads that display to a user based on a user's prior online activity.

32.    As a result, Defendant is able to further monetize user data by showing users ads they are more likely to engage with, thereby generating additional ad revenue for Defendant.

33.    The only reason Defendant is able to do so is because it uses Microsoft's Bot Framework and Azure platforms to record a user's data and chat communications without providing notice of such recording.

34.    On information and belief, Defendant intentionally utilized the Microsoft Bot Framework and Azure platforms, and knew that Microsoft would thereby access communications and other user data that were intended to be communicated to Defendant.

35.    Defendant did so to enable Microsoft to compile and analyze user inputs and other user data both to automate its chat system and to generate aggregated consumer data that Defendant would then monetize through tailored advertising.

### Plaintiff Byars's Facts

36.    On or around July 22, 2022, Byars visited Defendant's website, https://www.walmart.com/, to learn more about Defendant's products.

37.    BYARS asked a few questions using the "chat" feature.

38.    On information and belief, each question that Byars inputted to Defendant's chat system was routed to Microsoft's Bot Framework and Azure platforms in real time through the "direct line" that Defendant created between its website and Microsoft Azure.

39.    On information and belief, Byars PII was also harvested through the chat system and routed to Microsoft's Bot Framework and Azure platforms in real

time through the "direct line" that Defendant created between its website and Microsoft Azure.

40.    Microsoft, at Defendant's direction, then recorded, aggregated, and analyzed Byars's communications to Defendant and Byars's PII.

41.    Defendant's automated chat system then, based on the analysis performed by Microsoft on Byars's communications, referred Byars to Defendant's customer service email address and phone number.

42.    Defendant's website did not notify Byars that her communication was being recorded, stored, and/or monitored at any point.

43.    An invasion of privacy, such as this, causes a concrete harm to consumers. "Violations of the right to privacy have long been actionable at common law." *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 598 (9th Cir. 2020). "A right to privacy encompasses the individual's control of information concerning his or her person." *Id.* (internal quotations and citations omitted). Stautes such as CIPA "codify a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing." *Id.*

44.    By recording Byars's communication without her consent, Defendant has invaded Plaintiff's privacy.

45.    As a result of this invasion of privacy, Byars has suffered an injury in fact.

46.    Byars did not see, nor did she agree to, Defendant's privacy policy.

47.    At no time during her use of Defendant's automated chat system did Defendant notify Byars that it was recording her communications. Thus, Byars did not have any reasonable expectation that her communications were being recorded. Had Byars known that her communications were being recorded by Defendant she would have conducted herself differently.

48.    Today, it is common practice for companies to provide a notice at the outset of online chat communications that those communications will be recorded.

**FIRST AMENDED CLASS ACTION COMPLAINT**

Defendant, however, intentionally did not provide any such disclosure. Byars had a reasonable expectation of privacy in her customer service communications with Defendant.

49.    Byars did not learn that Defendant had recorded her communications until after those communications had already taken place.

## Plaintiff Valenzuela's Facts

50.    On or about July 22, 2022, Valenzuela visited the same website as Valenzuela to learn more about Defendant's products.

51.    Valenzuela asked a few questions using the "chat" feature.

52.    On information and belief, each question that Valenzuela inputted to Defendant's chat system was routed to Microsoft's Bot Framework and Azure platforms in real time through the "direct line" that Defendant created between its website and Microsoft Azure.

53.    On information and belief, Valenzuela's PII was also harvested through the chat system and routed to Microsoft's Bot Framework and Azure platforms in real time through the "direct line" that Defendant created between its website and Microsoft Azure.

54.    Microsoft, at Defendant's direction, then recorded, aggregated, and analyzed Valenzuela's communications to Defendant and Valenzuela's PII.

55.    An invasion of privacy, such as this, causes a concrete harm to consumers. "Violations of the right to privacy have long been actionable at common law." *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 598 (9th Cir. 2020). "A right to privacy encompasses the individual's control of information concerning his or her person." *Id.* (internal quotations and citations omitted). Stautes such as CIPA "codify a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing." *Id.*

56.    By recording Valenzuela's communication without her consent, Defendant has invaded Valenzuela's privacy.

9

**FIRST AMENDED CLASS ACTION COMPLAINT**

57.    As a result of this invasion of privacy, Valenzuela has suffered an injury in fact.

58.    At no time during her use of Defendant's automated chat system did Defendant notify Valenzuela that it was recording her communications.    Thus, Valenzuela did not have any reasonable expectation that her communications were being recorded.    Had Valenzuela known that her communications were being recorded by Defendant she would have conducted herself differently.

59.    Today, it is common practice for companies to provide a notice at the outset of online chat communications that those communications will be recorded. Defendant, however, intentionally did not provide any such disclosure.    Valenzuela had a reasonable expectation of privacy in her customer service communications with Defendant.

60.    Valenzuela did not learn that Defendant had recorded her communications until after those communications had already taken place.

**ACCRUAL OF RIGHTS TO PRIVACY CLAMS, CONTINUING VIOLATION, EQUITABLE TOLLING, AND FRAUDULENT CONCEALMENT**

61.    Plaintiffs did not discover, and could not discover through the exercise of reasonable diligence, the fact that Defendant was recording and/or monitoring the chats between Plaintiffs and members of the Class and Defendant without their knowledge or consent.

62.    Defendant concealed from Plaintiffs and members of the Class that they were monitoring and permitting third parties to eavesdrop on such communications.

63.    Defendant concealed the fact that they were recording and storing the aforementioned communications to create the false impression in the minds of Plaintiffs and members of the Class that they were not being monitored. At the outset of the communications, there was no warning to Plaintiffs that the communications were being stored, recorded, or monitored.    Such warnings are ubiquitous today.

**FIRST AMENDED CLASS ACTION COMPLAINT**

64.    Plaintiffs were justified in not bringing their claims earlier based on Defendant's failure to inform Plaintiffs and other members of The Class that the communications were being recorded.

## CLASS ACTION ALLEGATIONS

65.    Plaintiffs bring this action on behalf of themselves and on behalf of and all others similarly situated, as members of the proposed class (hereinafter "the Nationwide Class") defined as follows:

> All persons in the United States whose communications with Defendant's "chat" feature were tapped, recorded, read, stored, and/or used without their consent by Defendant or Defendant's agent/s within the one year prior to the filing of this action through the date of class certification.

66.    Plaintiffs additionally bring this action individually and on behalf of all others similarly situated as members of the proposed subclass (hereinafter "the California Subclass") defined as follows:

> All persons in California whose communications with Defendant's "chat" feature were tapped, recorded, read, stored, and/or used without their consent by Defendant or Defendant's agent/s within the one year prior to the filing of this action through the date of class certification.

67.    The Nationwide Class and the California Subclass will hereinafter be collectively referred to as "the Classes."

68.    Defendant, their employees and/or agents are excluded from the Classes.  Plaintiffs do not know the number of members in the Classes but believe the members of the Classes number in the thousands, if not more.  Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

69.    Plaintiffs and members of the Classes were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through their

**FIRST AMENDED CLASS ACTION COMPLAINT**

agents, intentionally tapped, and/or abetted the wiretapping of Plaintiffs' and members of the Classes' communications without their consent within the one year prior to the filing of the original Complaint in this action. Plaintiffs and members of the Classes were damaged thereby.

70.    This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Classes, and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiffs reserve the right to expand definition of the Classes to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

71.    The joinder of members of the Classes is impractical and the disposition of their claims in the class action will provide substantial benefits both to the parties and to the court. The Classes' members can be identified through Defendant's records or Defendant's agents' records.

72.    There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact relevant to the Classes predominate over questions which may affect individual member of the Classes, including the following:

    a.  Whether Defendant has a policy of intentionally tapping or making any unauthorized connection to Plaintiffs' and members of the Classes' communications on Defendant's website and reading or attempting to read or learn the contents of such communications;

    b.  Whether Defendant has a policy of permitting third parties to monitor communications on Defendant's website in real time;

    c.  Whether Defendant informed Plaintiffs and members of the Classes that their communications are being monitored and/or obtains their consent to monitor their communications;

    d.  Whether Defendant's conduct constituted a violation of California Penal Code § 631(a);

**FIRST AMENDED CLASS ACTION COMPLAINT**

e. Whether Defendant's conduct constituted a violation of California Penal Code § 632;

f. Whether Defendant's conduct constituted a violation of the federal Wire Tap Act;

g. Whether Plaintiffs and members of the Classes were damaged thereby, and the extent of damages for such violations; and

h. Whether Defendant should be enjoined from engaging in such conduct in the future.

73.     As persons whose communications with Defendant were intentionally tapped and monitored without notice or consent, Plaintiffs are asserting claims that are typical of the Classes, as every other member of the Classes, like Plaintiffs, were exposed to virtually identical conduct.

74.     Plaintiffs will fairly and adequately represent and protect the interests of the Classes in that Plaintiffs have no interests antagonistic to any member of the Classes.

75.     Plaintiffs and the members of the Classes have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct.  Absent a class action, the Classes will continue to face the potential for irreparable harm.  In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct.  Because of the size of the individual claims of members of the Classes, few, if any, members of the Classes could afford to seek legal redress for the wrongs complained of herein.

76.     Plaintiffs have retained counsel experienced in handling class action claims to further ensure such protection.

77.     A class action is a superior method for the fair and efficient adjudication of this controversy.  Class-wide damages are essential to induce Defendant to comply with California law.  The interest of members of the Classes in individually controlling the prosecution of separate claims against Defendant is

small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

78.    Defendant has acted on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Classes as a whole.

## FIRST CAUSE OF ACTION

### INVASION OF PRIVACY: VIOLATION OF PENAL CODE § 631

*ON BEHALF OF THE CALIFORNIA SUBCLASS*

79.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

80.    California Penal Code § 631 prohibits anyone from (1) "by means of any machine, instrument, contrivance, or in any other manner," intentionally tapping or making any unauthorized connection with any "telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,"  or (2) "read[ing], or attempt[ing] to read, or to learn the contents" of a communication "without the consent of all parties to the communication," or (3) "us[ing], or attempt[ing] to use, in any manner, or for any purpose, or to communicate in any way, any information" obtained by the prior two methods.  Thus, California Penal Code § 631 has three prongs, any one of which is sufficient to establish liability.

81.    Moreover, under California Penal Code § 631, a person "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above," may also be held liable.

82.    Additionally, Section 631(a) applies to communications which take place on the internet.

///

**FIRST AMENDED CLASS ACTION COMPLAINT**

**Intentional Tapping**

83.    As discussed above, Defendant intentionally used or caused to be used the Microsoft Bot Framework and Azure platforms, by creating a "direct line" between its website and Microsoft Azure and communicating data over that "direct line," which enabled Microsoft to record the inputs and PII of Plaintiffs and California Subclass Members.

84.    Defendant did so intentionally so that it could automate its chat system and so that it could obtain aggregated consumer data on Plaintiffs and California Subclass Members to monetize such data in the form of tailored internet ads, increased sales, and improved customer experiences.

85.    Thus, Defendant agreed with, employed, and/or conspired with Microsoft to intentionally tap the lines of communication between Defendant and Plaintiffs and California Subclass Members.

86.    At no time during the communications did Defendant inform Plaintiffs or any other member of The California Subclass that their communications were being recorded and/or monitored and at no time did Plaintiffs or any other member of The California Subclass consent to this activity.

87.    Defendant, knowing that this conduct was unlawful and a violation of Plaintiffs' and the Class members' right to privacy and a violation of California Penal Code § 630, *et seq*., did intrude on Plaintiffs' and the California Subclass Members' privacy by knowingly and intentionally engaging in the aforementioned recording activities relative to the internet communications between Plaintiffs and California Subclass Members on the one hand, and Defendant on the other hand, as alleged herein above.

**Reading the Contents of a Communication**

88.    As discussed above, Defendant intentionally used or caused to be used the Microsoft Bot Framework and Azure platforms, by creating a "direct line"

between its website and Microsoft Azure, which enabled Microsoft to read the chat communications of Plaintiffs and California Subclass Members.

89.    More specifically, because Microsoft's Bot Framework platform automated Defendant's chat system, Microsoft necessarily must have read the communications submitted by Plaintiffs and California Subclass Members in order for Microsoft's Bot Framework and Azure platforms to determine the appropriate response that the automated chat system should provide.

90.    The primary purpose of Microsoft's Bot Framework platform is to "[c]reate a bot with the ability to speak, <u>listen, understand, and learn from your users</u> . . ."[1] Thus, by routing user inputs through the "direct line" it created between its website and Microsoft Azure to a bot created using Bot Framework and hosted on Microsoft Azure, Defendant caused Microsoft to read and learn the contents of the messages submitted by Plaintiffs and California Subclass Members to Defendant's chat system.

91.    Microsoft read and analyzed these communications at the direction of Defendant in order to determine the appropriate response that Defendant's automated chat system should provide.

92.    Defendant therefore agreed with, employed, and/or conspired with Microsoft to read the contents of communications between Defendant and Plaintiffs and California Subclass Members without the consent of all parties involved.

93.    At no time during the communications did Defendant inform Plaintiffs or any other member of The Class that their communications were being recorded and/or read by a third party and at no time did Plaintiffs or any other member of The California Subclass consent to this activity.

94.    Defendant, knowing that this conduct was unlawful and a violation of Plaintiffs' and the California Subclass members' right to privacy and a violation of California Penal Code § 630, *et seq*., did intrude on Plaintiffs' and the California

---

[1] *See* https://dev.botframework.com/

**FIRST AMENDED CLASS ACTION COMPLAINT**

Subclass Members' privacy by knowingly and intentionally engaging in the aforementioned recording activities relative to the internet communications between Plaintiffs and Class Members on the one hand, and Defendant on the other hand, as alleged herein above.

### Using Information Obtained in Violation of Section 631(a)

95.    As discussed above, Defendant intentionally used or caused to be used the Microsoft Bot Framework and Azure platforms, by creating a "direct line" between its website and Microsoft Azure, which enabled Microsoft to use information obtained by illegal wiretapping to determine the proper responses for the automated chat system, and to aggregate the consumer data of Plaintiffs and California Subclass Members.

96.    Defendant did so in order to streamline its automated chat system and to monetize the user data of Plaintiffs and California Subclass Members, as discussed above.

97.    Thus, Defendant agreed with, employed, and/or conspired with Microsoft to use the contents of communications that were obtained via illegal wiretapping.

98.    At no time during the communications did Defendant inform Plaintiffs or any other member of The California Subclass that their communications were being recorded and/or used by a third party, and at no time did Plaintiffs or any other member of The California Subclass consent to this activity.

99.    Defendant, knowing that this conduct was unlawful and a violation of Plaintiffs' and the California Subclass members' right to privacy and a violation of California Penal Code § 630, *et seq*., did intrude on Plaintiffs' and the California Subclass Members' privacy by knowingly and intentionally engaging in the aforementioned recording activities relative to the internet communications between Plaintiffs and California Subclass Members on the one hand, and Defendant on the other hand, as alleged herein above.

**FIRST AMENDED CLASS ACTION COMPLAINT**

100.    Based on the foregoing, Plaintiffs and the California Subclass members are entitled to, and below herein do pray for, their statutory remedies and damages, including but not limited to, those set forth in California Penal Code § 637.2.

101.    Because this case is brought for the purposes of enforcing important rights affecting the public interest, Plaintiffs and The California Subclass seek recovery of their attorney's fees pursuant to the private attorney general doctrine codified in Code of Civil Procedure § 1021.5, or any other statutory basis.

## SECOND CAUSE OF ACTION

### INVASION OF PRIVACY: VIOLATION OF PENAL CODE § 632

*ON BEHALF OF THE CALIFORNIA SUBCLASS*

102.    Plaintiffs incorporate by reference all of the above paragraphs as if fully stated herein.

103.    Californians have a constitutional right to privacy.  Moreover, the California Supreme Court has definitively linked the constitutionally protected right to privacy within the purpose, intent and specific protections of the Privacy Act, including specifically, Penal Code § 632.  California's constitutional privacy provision was enacted, in part, to protect California from overly intrusive business practices that were seen to pose a significant and increasing threat to personal privacy.  Thus, California must be viewed as having a strong and continuing interest in the full and vigorous application of the provisions of section 632 prohibiting the recording of conversations without the knowledge or consent of all parties to the conversation.

104.    California Penal Code § 632 prohibits one party to a conversation from intentionally recording the conversation without the knowledge or consent of the other party.  Penal Code § 632 is violated the moment the recording is made without the consent of all parties thereto, regardless of whether it is subsequently disclosed that the conversation was recorded.  The only intent required by Penal Code § 632 is that the act of recording itself be done intentionally.  There is no requisite intent

**FIRST AMENDED CLASS ACTION COMPLAINT**

on behalf of the party doing the surreptitious recording to break California law or any other law, or to invade the privacy right of any other person.

105.    As described above, Plaintiffs allege that Defendant utilized the Microsoft Bot Framework and Azure platforms to record all messages between Plaintiffs and California Subclass Members on the one hand, and Defendant on the other, through Defendant's automated chat system.

106.    Thus, Defendant has employed and/or caused to be employed certain recording equipment on the communication lines, wires, and/or cables associated with its automated chat system.

107.    This recording equipment was used to record the conversations of Plaintiffs and California Subclass Members, in violation of California Penal Code § 632.6(a).

108.    At no time during which these conversations were taking place did Defendant inform Plaintiffs or any other member of the California Subclass that the recording of their conversations were taking place and at no time did Plaintiffs or any other members of the California Subclass consent to this activity.

109.    Defendant, knowing that this conduct was unlawful and a violation of Plaintiffs' and the California Subclass members' right to privacy and a violation of California Penal Code § 630, *et seq*., did intrude on Plaintiffs' and the California Subclass Members' privacy by knowingly and intentionally engaging in the aforementioned recording activities relative to the internet communications between Plaintiffs and California Subclass Members on the one hand, and Defendant on the other hand, as alleged herein above.

110.    Based on the foregoing, Plaintiffs and the California Subclass members are entitled to, and below herein do pray for, their statutory remedies and damages, including but not limited to, those set forth in California Penal Code § 637.2.

111.    Because this case is brought for the purposes of enforcing important rights affecting the public interest, Plaintiffs and The California Subclass seek

19

recovery of their attorney's fees pursuant to the private attorney general doctrine codified in Code of Civil Procedure § 1021.5, or any other statutory basis.

### THIRD CAUSE OF ACTION

### VIOLATION OF THE UNFAIR COMPETITION LAW ("UCL")

### CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, *ET SEQ.*

*On Behalf of the California Subclass*

112.    Plaintiffs incorporate by reference all of the above paragraphs as though fully stated herein.

113.    Defendant, Plaintiffs, and California Subclass Members are "persons" as defined by the Cal. Bus. & Prof. Code § 17201.

114.    The UCL prohibits any unlawful, unfair, or fraudulent business practices, and provides for injunctive relief and restitution for violations.

115.    "By proscribing any unlawful business practice, §17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

116.    Virtually any law or regulation—federal or state, statutory or common law—can serve as a predicate for a UCL "unlawful" violation. *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012).

117.    Defendant has violated the UCL's unlawful prong as a result of its violations of California Penal Code §§ 631 and 632, and 18 U.S.C. § 2510, *et seq.*

118.    Defendant's actions, described herein, are likewise "unfair" because they violate California's public policy interest in protecting California consumers' privacy.  Defendant committed unfair business acts or practices by: (1) engaging in conduct where the utility of such conduct is outweighed by the harm to Plaintiffs and California Subclass Members; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and

20

California Subclass Members; and (3) engaging in conduct that undermines or violates the intent of the consumer protection laws alleged herein.

119. As a direct and proximate result of Defendant's acts, consumers have been and are being harmed in that their right to privacy is being infringed.

120. Pursuant to California Business & Professions Code § 17203, Plaintiff and California Subclass Members seek injunctive relief in the form of an Order requiring Defendant to cease the acts of unfair competition alleged herein.

### FOURTH CAUSE OF ACTION

### VIOLATION OF THE WIRETAP ACT, 18 U.S.C. § 2510, *ET SEQ.*

*On Behalf of the Classes*

121. Plaintiffs incorporate by reference all of the above paragraphs as though fully stated herein.

122. The Wiretap Act, as amended by the Electronic Communications and Privacy Act of 1986, prohibits the intentional interception of any wire or electronic communication. Under 18 U.S.C. § 2520(a) there is a private right of action to any person whose wire, oral, or electronic communication is intercepted.

123. Plaintiffs and Members of the Classes are persons whose electronic communications were intercepted by Defendant.

124. Defendant intercepted Plaintiffs' and Members of the Classes' electronic communications without consent when Plaintiffs and Members of the Classes had conversations via the chat system with Defendant on its website.

125. Plaintiffs and Members of the Classes were unaware that Defendant was intercepting their electronic communications and tracking their communications and interactions. Defendant intentionally utilized technology as a means of intercepting and acquiring the contents of Plaintiffs' and Members of the Classes' electronic communications, in violation of 18 U.S.C. § 2511.

126. As such, Plaintiff and Members of the Classes are entitled to preliminary, equitable, and declaratory relief, in addition to statutory damages of the

21

greater of $10,000 or $100 per day for each violation, actual damages, punitive damages, and reasonable attorneys' fees and costs under 18 U.S.C. § 2520.

## **PRAYER FOR RELIEF**

**FIRST AND SECTION CAUSES OF ACTION FOR INVASION OF PRIVACY:**

**VIOLATION OF PENAL CODE §§ 631 AND 632**

Wherefore, Plaintiffs respectfully requests the Court grant Plaintiffs and members of the California Subclass the following relief against Defendant:

127.   That this action be certified as a class action on behalf of The California Subclass and Plaintiffs be appointed as the representatives of The California Subclass.

128.   For the greater of statutory damages of $5,000 per violation or three times actual damage per violation pursuant to Penal Code § 637.2(a) for Plaintiffs and each member of The California Subclass.

129.   Injunctive relief in the form of an order requiring Defendant to disgorge all ill-gotten gains and awarding Plaintiffs and The California Subclass full restitution of all monies wrongfully acquired by Defendant by means of such unfair and unlawful conduct.

130.   That the Court preliminarily and permanently enjoin Defendant from recording and/or monitoring each and every internet communication taking place on its websites with California residents, including Plaintiffs and The California Subclass, without their prior consent, as required by California Penal Code § 630, *et seq.*

131.   For exemplary or treble damages.

132.   For costs of suit.

133.   For prejudgment interest at the legal rate; and

134.   For such further relief as this Court deems necessary, just, and proper.

///

**FIRST AMENDED CLASS ACTION COMPLAINT**

**THIRD CAUSE OF ACTION FOR VIOLATIONS OF**

**CALIFORNIA'S UCL:**

**CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200,** *ET SEQ.*

Wherefore, Plaintiffs respectfully request the Court grant Plaintiffs and members of the California Subclass the following relief against Defendant:

135.  That the Court preliminarily and permanently enjoin Defendant from recording each and every incoming and outgoing conversation via the chat feature on Defendant's website with California residents, including Plaintiffs and the California Subclass, without their prior consent, as required by California Penal Code § 630, *et seq.*, and to maintain the confidentiality of the information of Plaintiffs and the California Subclass;

136.  For attorney's fees and costs, pursuant to Cal. Code of Civ. Proc. § 1021.5;

137.  For prejudgment interest at the legal rate; and

138.  For such further relief as this Court deems necessary, just, and proper.

**FOURTH CAUSE OF ACTION FOR VIOLATIONS OF THE FEDERAL**

**WIRETAP ACT, 18 U.S.C. § 2510,** *ET SEQ.*

Wherefore, Plaintiffs respectfully request the Court grant Plaintiffs and members of the Classes the following relief against Defendant:

139.  That this action be certified as a class action on behalf of the Classes and Plaintiffs be appointed as the representatives of the Classes;

140.  For the greater of statutory damages of $10,000 or $100 per day for each violation of 18 U.S.C. § 2510, *et seq.*, pursuant to 18 U.S.C. §§ 2520(b)(2) and 2520(c)(2)(B);

141.  Injunctive relief in the form of an order requiring Defendant to disgorge all ill-gotten gains and awarding Plaintiff and the Classes full restitution of all monies wrongfully acquired by Defendant by means of such unfair and unlawful conduct;

142.   For punitive damages, pursuant to 18 U.S.C. § 2520(b)(2);

143.   For attorney's fees and costs, pursuant to 18 U.S.C. § 2520(b)(3);

144.   For prejudgment interest at the legal rate; and

145.   For such further relief that this Court deems necessary, just, and proper.

### **TRIAL BY JURY**

146.   Plaintiffs hereby request a jury trial in this matter.


Dated: October 25, 2023          **LAW OFFICES OF TODD M. FRIEDMAN, P.C.**


                                    BY:   s/Todd M. Friedman
                                          TODD M. FRIEDMAN, ESQ.
                                          ATTORNEYS FOR PLAINTIFFS

**FIRST AMENDED CLASS ACTION COMPLAINT**