COOLEY LLP
MICHELLE C. DOOLIN (179445)
(mdoolin@cooley.com)
10265 Science Center Drive
San Diego, California 92121-1117
Telephone:    +1 858 550 6000
Facsimile:    +1 858 550 6420

KYLE C. WONG (224021)
(kwong@cooley.com)
REBECCA L. TARNEJA (2943461)
(rtarneja@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone:    +1 415 693 2000
Facsimile:    +1 415 693 2222

Attorneys for Defendant
WAL-MART.COM USA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARISHA BYARS and SONYA VALENZUELA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WAL-MART.COM USA, LLC; and DOES 1 through 10, inclusive, and each of them,<br><br>Defendant. | Case No. 3:23-cv-04315-AGT<br><br>**DEFENDANT WAL-MART.COM USA, LLC'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: February 9, 2024<br>Time: 10:00 AM<br>Dept: Courtroom A (15th Floor)<br>Judge: Hon. Alex G. Tse |

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I.      INTRODUCTION ......................................................................................................... 1

II.     BACKGROUND ........................................................................................................... 3

III.    LEGAL STANDARD .................................................................................................... 4

IV.     ARGUMENT ................................................................................................................ 4

    A.    Plaintiffs' Complaint Fails Under Rule 8(a) ........................................................ 4

    B.    Plaintiffs Consented to the Recording of Their Chats by Walmart ..................... 5

    C.    Plaintiffs Fail to State a Claim Under Section 631(a) .......................................... 8

        1.    Plaintiffs' section 631(a) claim fails as a matter of law because Walmart cannot wiretap or eavesdrop on its own communications. ............................ 9

        2.    Plaintiffs cannot state a claim for aiding and abetting theory. ..................... 10

        3.    Plaintiffs fail to state a claim under any of the operative clauses. ............... 14

            a.    Plaintiffs fail to state a claim under the first clause because it does not apply to internet communications. ................................................ 14

            b.    Plaintiffs fail to state a claim under the first clause because any alleged recording employed by Walmart is not a "machine, instrument, or contrivance." ............................................................... 16

            c.    Plaintiffs fail to state a claim under the second clause because they fail to allege interception of "content" while "in transit." ................ 16

                i.    Plaintiffs have not alleged any "contents." ................................... 17

                ii.   Plaintiffs have not alleged any interception "in transit." .............. 18

            d.    Plaintiffs fail to state a claim under the third clause because their claims under the first two clauses fail. ........................................... 19

    D.    Plaintiffs Fail To State A Claim Under Section 632 Because Plaintiffs' Allege No Confidential Communication .................................................................... 20

    E.    Plaintiffs Fail To State A Claim Under the Federal Wiretap Act ..................... 21

    F.    Plaintiffs' UCL Claim Fails ............................................................................. 21

        1.    Plaintiffs Do Not Allege Economic Injury ................................................. 21

        2.    Plaintiffs Have An Adequate Remedy at Law ............................................ 22

            a.    Plaintiffs Do Not Properly Alleged That Walmart Engaged in Unlawful or Unfair Conduct ................................................................ 23

    G.    Plaintiffs Lack Article III Standing to Assert Any Injunctive Relief ................ 23

V.      CONCLUSION ........................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................ 4

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,*
    459 U.S. 519 (1983) ........................................................................ 4

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ..................................................................... 4, 5

*Bradshaw v. City of Los Angeles,*
    2023 WL 3400634 (C.D. Cal. Mar. 10, 2023) ......................................... 22

*Brodsky v. Apple Inc.,*
    445 F.Supp.3d 110 (N.D. Cal. 2020) ........................................ 12, 17, 21

*Byars v. Casper Sleep,*
    CIVSB2215902 (San Bernadino Super. Ct. July 22, 2022) ......................... 7

*Campbell v. Facebook Inc.,*
    77 F.Supp.3d 836 (N.D. Cal. 2014) .................................................. 20

*Cetacean Cmty. v. Bush,*
    386 F.3d 1169 (9th Cir. 2004).......................................................... 23

*Cody v. Boscov's, Inc.,*
    2023 WL 2338302 (C.D. Cal. Mar. 2, 2023) ....................................... 10

*Commw. v. Proetto,*
    771 A.2d 823 (Pa. Super. 2001)......................................................... 6

*Crowley v. CyberSource Corp.,*
    166 F.Supp.2d 1263 (N.D. Cal. 2001) ............................................... 16

*Davis v. HSBC Bank Nev., NA,*
    691 F.3d 1152 (9th Cir. 2012).......................................................... 21

*Deteresa v. Am. Broad. Cos., Inc.,*
    121 F.3d 460 (9th Cir. 1997)........................................................... 20

*Esparza v. Lenox Corp.,*
    2023 WL 2541352 (N.D. Cal. Mar. 16, 2023) ..................................... 12

*In re Facebook Internet Tracking Litig.,*
    140 F.Supp.3d 922 (N.D. Cal. 2015) ......................................... 5, 16, 17

*In re Facebook Priv. Litig.*,
  791 F.Supp.2d 705 (N.D. Cal. 2011) ................................................................. 22

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) .......................................................................................... 24

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ............................................................................. 4

*In re Google Assistant Priv. Litig.*,
  457 F.Supp.3d 797 (N.D. Cal. 2020) ............................................................ 15, 19

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
  806 F.3d 125 (3d Cir. 2015) ................................................................................ 9

*Graham v. Noom, Inc.*,
  533 F.Supp.3d 823 (N.D. Cal. 2021) ..........................................................*passim*

*Griggs-Ryan v. Smith*,
  904 F.2d 112 (1st Cir. 1990) ........................................................................... 7, 8

*Hammerling v. Google LLC*,
  615 F.Supp.3d 1069 (N.D. Cal. 2022) ............................................................... 17

*Herskowitz v. Apple Inc.*,
  940 F.Supp.2d 1131 (N.D. Cal. 2013) ............................................................... 23

*Hodsdon v. Mars, Inc.*,
  891 F.3d 857 (9th Cir. 2018) ............................................................................. 23

*In re iPhone App. Litig.*,
  2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) .................................................. 22

*Javier v. Assurance IQ LLC*,
  2022 WL 1744107 (9th Cir. May 31, 2022) ....................................................... 15

*Javier v. Assurance IQ, LLC*,
  649 F.Supp.3d 891 (N.D. Cal. 2023) ............................................................ 14, 15

*Johnson v. Blue Nile, Inc.*,
  2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) ..................................................... 17

*Kellman v. Spokeo, Inc.*,
  599 F.Supp.3d 877 (N.D. Cal. 2022) ................................................................. 21

*Kirch v. Embarq Mgmt. Co.*,
  702 F.3d 1245 (10th Cir. 2012) ......................................................................... 12

*Konop v. Hawaiian Airlines, Inc.*,
  302 F.3d 868 (9th Cir. 2002) ............................................................................. 18

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

iii

DEFENDANT'S MOTION TO DISMISS FAC
3:23-CV-04315-AGT

*Licea v. Am. Eagle Outfitters, Inc.*,
   2023 WL 2469630 (C.D. Cal. Mar. 7, 2023) ................................................................. 10

*Licea v. Cinmar, LLC*,
   2023 WL 2415592 (C.D. Cal. Mar. 7, 2023) ................................................................. 10

*Loo v. Toyota Motor Sales, USA, Inc.*,
   2019 WL 7753448 (C.D. Cal. Dec. 20, 2019) ............................................................... 22

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ........................................................................................................ 24

*Martin v. Sephora USA, Inc.*,
   No. 1:22-CV-01355-JLT-SAB, 2023 WL 2717636 (E.D. Cal. Mar. 30, 2023),
   *report and recommendation adopted*, 2023 WL 3061957 (E.D. Cal. Apr. 24,
   2023) ............................................................................................................................... 12

*Mastel v. Miniclip SA*,
   549 F.Supp.3d 1129 (E.D. Cal. 2021) ................................................................. 15, 19

*Membrila v. Receivables Performance Mgmt., LLC*,
   2010 WL 1407274 (S.D. Cal. April 6, 2010) ........................................................... 4, 9

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
   521 F.3d 1097 (9th Cir. 2008) ......................................................................................... 4

*Mireskandari v. Daily Mail & Gen. Tr. PLC*,
   2013 WL 12129559 (C.D. Cal. July 30, 2013) ............................................................. 18

*Nacarino v. Chobani*,
   LLC, 2021 WL 3487117 (N.D. Cal. Aug. 9, 2021) ...................................................... 23

*NovelPoster v. Javitch Canfield Grp.*,
   140 F.Supp.3d 938 (N.D. Cal. 2014) ............................................................................. 18

*Pena v. GameStop, Inc.*,
   2023 WL 3170047 (S.D. Cal. Apr. 27, 2023) ............................................................... 10

*Perkins v. LinkedIn Corp.*,
   53 F.Supp.3d 1190 (N.D. Cal. 2014) ............................................................................... 8

*Potter v. Havlicek*,
   2008 WL 2556723 (S.D. Ohio June 23, 2008) ............................................................. 16

*Powell v. Union Pac. R.R. Co.*,
   864 F.Supp.2d 949 (E.D. Cal. 2012) ............................................................... 11, 12, 13

*Quigley v. Yelp, Inc.*,
   2018 WL 7204066 (N.D. Cal. Jan. 22, 2018) ............................................................... 19

*Revitch v. New Moosejaw, LLC*,
  No. 18-cv-06827, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ..................................... 13, 14

*Rodriguez v. Google LLC*,
  2021 WL 2026726 (N.D. Cal. May 21, 2021) ......................................................... 19, 21, 22

*Rogers v. Ulrich*,
  52 Cal.App.3d 894 (1975) ................................................................. 9, 11, 13, 14

*Rosenow v. Facebook, Inc.*,
  2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) ............................................................. 4, 19

*Saleh v. Nike, Inc.*,
  562 F. Supp. 3d 503 (C.D. Cal. 2021) ..................................................................... 14

*Shayler v. 1310 PCH, LLC*,
  51 F.4th 1015 (9th Cir. 2022) ................................................................................. 2

*Silver v. Stripe Inc.*,
  2021 WL 3191752 (N.D. Cal. July 28, 2021) ........................................................... 8

*Smith v. Facebook, Inc.*,
  745 F.App'x 8 (9th Cir. 2018) ................................................................................. 8

*Smith v. LoanMe, Inc.*,
  11 Cal.5th 183 (2021) ..................................................................................... 6, 9

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ........................................................................... 22, 23

*State v. Lott*,
  152 N.H. 436 (2005) ......................................................................................... 6

*State v. Townsend*,
  147 Wash. 2d 666 (2002) .................................................................................. 6

*Steckman v. Hart Brewing, Inc.*,
  143 F.3d 1293 (9th Cir. 1998) ............................................................................ 12

*Swarts v. Home Depot, Inc.*,
  2023 WL 5615453 (N.D. Cal. Aug. 30, 2023) ......................................................... 20, 21

*Tavernetti v. Super. Ct.*,
  22 Cal.3d 187 (1978) ..................................................................................... 8, 19

*Thompson v. Home Depot, Inc.*,
  2007 WL 2746603 (S.D. Cal. Sept. 18, 2007) .......................................................... 22

*TransUnion LLC v. Ramirez*,
  141 S.Ct. 2190 (2021) ...................................................................................... 24

*Trigueros v. Adams,*
   658 F.3d 983 (9th Cir. 2011) .................................................................................. 7

*Valenzuela v. Keurig Green Mountain, Inc.,*
   2023 WL 3707181 (N.D. Cal. May 24, 2023) ...................................................... 13

*Valenzuela v. Massage Envy Franchising LLC,*
   22STCV23456 (L.A. Super. Ct. July 20, 2022) .................................................... 7

*In re Vizio, Inc., Consumer Priv. Litig.,*
   238 F.Supp.3d 1204 (C.D. Cal. 2017) ........................................................... 18, 19

*Warden v. Kahn,*
   99 Cal. App. 3d 805 (1979) ........................................................................... 9, 10

*Watkins v. MGA Entm't, Inc.,*
   550 F.Supp.3d 815 (N.D. Cal. 2021) .................................................................. 23

*Williams v. WhatIf Holdings, LLC,*
   2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ........................................... *passim*

*In re Yahoo Mail Litig.,*
   7 F.Supp.3d 1016 (N.D. Cal. 2014) .................................................................... 21

*In re Yahoo! Inc. Consumer Data Sec. Breach Litig.,*
   2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) .................................................... 22

*Yoon v. Lululemon USA, Inc.,*
   549 F.Supp.3d 1073 (C.D. Cal. 2021) ................................................................ 17

*Zapata Fonseca v. Goya Foods Inc.,*
   2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) ..................................................... 22

*In re Zynga Priv. Litig.,*
   750 F.3d 1098 (9th Cir. 2014) ............................................................................ 17

**Statutes**

18 U.S.C.
   §§ 2510 *et seq.* ............................................................................................ *passim*
   § 2511(2)(c) ......................................................................................................... 12
   § 2511(2)(d) ............................................................................................. 5, 12, 21

Cal. Bus. & Prof. Code
   § 17200 ............................................................................................................... 21
   § 17204 ............................................................................................................... 21

Cal. Penal Code
    § 630.................................................................................................. 2, 3, 9, 20, 21
    § 631(a) .......................................................................................................... *passim*
    § 631(a) .................................................................................................................. 5
    § 632(a) ............................................................................................................ 5, 20
    § 632(c) ................................................................................................................ 20

**Other Authorities**

Federal Rule of Civil Procedure
    Rule 8(a)......................................................................................................... 2, 4, 5
    Rule 11 .................................................................................................................. 12
    Rule 12(b)(6) ..................................................................................................... 4, 17

U.S. Const. art. III, § 2 ............................................................................................. 23

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 9, 2024, at 10:00 am, Defendant Wal-Mart.com USA, LLC ("Walmart") will and hereby does move the Court for an order dismissing with prejudice the complaint of Plaintiffs Arisha Byars and Sonya Valenzuela pursuant to Federal Rules of Civil Procedure 12(b)(6). This motion is made on the grounds that Plaintiffs' claims for violations of California's Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631 and 632; California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and the Federal Wiretap Act ("Wiretap Act"), 18 U.S.C. §§ 2510 *et seq.* fail as a matter of law.  This motion is based on this notice and motion, the below memorandum, all pleadings, records, and files in this action, Walmart's Request for Judicial Notice, the Declaration of Kyle Wong in Support of Defendant's Motion to Dismiss, the Declaration of Stacy Krsulic in Support of Defendant's Motion to Dismiss, and such evidence and argument as may be presented at or before the hearing on this motion.

**QUESTION PRESENTED**

Whether Plaintiffs have stated a cause of action where the allegations lack specificity and do not meet the statutory elements.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    <u>INTRODUCTION</u>

This case is one of over 50 lawsuits brought by a group of plaintiffs' counsel (including the one at bar) throughout California consisting of cookie cutter complaints alleging that various retail websites, like Walmart, violated California's wiretapping laws.  Specifically, the suits allege that these websites offer users a chat feature giving users the ability to communicate (or "chat") with the website, and that the websites then wiretap *their own conversations* with these users by recording the chats without user consent in violation of CIPA.  But there is nothing nefarious or unexpected when a party to a chat conversation keeps a record of that interaction; recording is, in fact, a necessary requirement of the chat medium itself.  A user in such a conversation knows that her message must be recorded so that it can be sent and read by the recipient.  By labeling these commonplace (and voluntary) consumer interactions as criminal "wiretapping" and

"eavesdropping," Plaintiffs' theory of liability would essentially criminalize an otherwise innocuous customer service in pursuit of significant statutory damages.[1]  The Court should reject their extortionate and meritless claims, which fail for the reasons stated below.

As a preliminary matter, Plaintiffs' First Amended Complaint ("FAC") contains nothing but conclusory recitations of the statutory elements of the various causes of action without sufficient details to give fair notice of their claims and their bases to Walmart, in violation of Federal Rule of Civil Procedure Rule 8(a).  For example, while each of Plaintiffs claims rests upon Walmart's alleged conduct via its chat feature, Plaintiffs only vaguely allege they asked a "few questions" using the chat of indeterminate length and substance with Walmart.  Nor do Plaintiffs provide the actual contents of the alleged chat(s) at issue or allege that they shared any personal information with Walmart.  Without such information, Plaintiffs have not given fair notice of their claims and the FAC should be dismissed on this basis alone.

Even if the FAC met Rule 8's notice requirements (it does not), all Plaintiffs' claims would still fail as a matter of law for a number of reasons.  Plaintiffs implicitly consented to any recording; unlike telephone conversations, written chat messages must be recorded in order to be conveyed to and read by the recipient.  Through Plaintiffs' very act of sending a written message to Walmart, they consented to the recording of those messages.  Further, Plaintiffs consented to any recording by expressly agreeing to the collection of data as outlined in Walmart's Privacy Policy.  Moreover, as a party to the communication, Walmart cannot be held liable, either directly or under an aiding and abetting theory of liability, for recording or creating transcripts of its *own* communications because eavesdropping can only be done by a third party.

As to section 631, Plaintiffs fail to allege the required elements of a claim under the statute.  They do not allege that, among other things, any "contents" of their communications were intercepted before they reached their intended recipient, Walmart. Plaintiffs' section 632 claim fails because Plaintiffs do not properly allege that their use of the Walmart chatbot involved a "confidential communication." Plaintiffs' claim under the Wiretap Act, a single-party consent

---

[1] These types of serial litigations have been criticized by the Ninth Circuit for using courts to extort businesses with a "wave of 'get-money-quick' lawsuits."  *Shayler v. 1310 PCH, LLC*, 51 F.4th 1015, 1017 (9th Cir. 2022).

statute, similarly fails because Walmart consented to the communications.  And Plaintiffs' UCL claim fails because they have pled no economic injury and the claim is predicated on the other claims, which all fail.

For these reasons and those that follow, the Court should dismiss the FAC in its entirety.

## II.    <u>BACKGROUND</u>

Walmart is a retailer that offers a variety of products for sale through its website, https://www.walmart.com/ ("Website").  Both Plaintiffs claim to have accessed the Website on the same day, July 22, 2022, and to have engaged with a chat feature on the Website that allowed them to "ask[] a few questions."  (FAC ¶¶ 37, 51.)  The FAC does not provide more detail about Plaintiffs' interactions in the chat feature or what they allegedly shared.  Plaintiffs do allege that Byars's and Valenzuela's communications on Walmart's chat system were routed to "Microsoft's Bot Framework and Azure Platforms in real time through the 'direct line' that [Walmart] created between its website and Microsoft Azure."  (FAC ¶¶ 38, 52.) Plaintiffs allege this platform allows Microsoft to receive data and that Walmart uses the data to develop its chat feature, improve customer experiences, and tailor advertising.  (FAC ¶¶ 26-35.)

On July 20, 2023, Plaintiffs filed their initial Complaint alleging that Walmart was "wiretapping" Plaintiffs and its other Website users who opted to use the Website's chat feature. Walmart filed a Motion to Dismiss on October 5, 2023, and the Plaintiffs filed their FAC on October 25, 2023.  The FAC purports to allege a nationwide and California class action and alleges that Walmart "directly or through their agents, intentionally tapped, and/or abetted the wiretapping of Plaintiffs' and the members of the Classes' communications without their consent" and "by utilizing such wiretaps to record the conversations between Plaintiffs and putative Class Members . . . without their prior consent, Plaintiffs allege [Walmart] has violated California Penal Code Section 632 which prohibits the nonconsensual recording of confidential communications."  (FAC ¶¶ 65-69, 4.)  As with their scant allegations of the actual interactions with the Website and its chat feature, Plaintiffs' FAC lacks a number of key allegations: it does not identify how Plaintiffs access the website, where they were when they accessed the website, what information was shared, nor do

they allege how any interception process happens beyond the vague allegation that chat communications were routed "in real time" through a "direct line." (*See generally* FAC.)

### III.    LEGAL STANDARD

Rule 8(a) of the Federal Rules of Civil Procedure requires plaintiffs to plead a claim with enough specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (cleaned up).  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must thus plead "enough facts to state a claim to relief that is plausible on its face." *Williams v. WhatIf Holdings, LLC*, 2022 WL 17869275, at *1 (N.D. Cal. Dec. 22, 2022) (citing *Twombly*, 550 U.S. at 570); *see also Rosenow v. Facebook, Inc.*, 2020 WL 1984062, at *7 (S.D. Cal. Apr. 27, 2020) (same, dismissing federal and California wiretapping claims for failure to allege interception of chat messages).  "Threadbare recitals" of the elements of a cause of action "do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  A court cannot fill in the gaps of a complaint, either, such that "[i]n spite of the deference the court is bound to pay to the plaintiff's allegations, it is not proper for the court to assume that 'the [plaintiff] can prove facts [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged.'" *Membrila v. Receivables Performance Mgmt., LLC*, 2010 WL 1407274, at *2 (S.D. Cal. April 6, 2010) (quoting *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983)).  Dismissal is appropriate "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

### IV.    ARGUMENT

#### A.    Plaintiffs' Complaint Fails Under Rule 8(a)

Rule 8(a) requires Plaintiffs to plead "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to give Walmart fair notice of the claim and its basis; this requires Plaintiffs to plead "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545.  To satisfy Rule 8(a) and avoid

1   dismissal, Plaintiffs' factual allegations "must be enough to raise a right to relief above the

2   speculative level" such that the claim "is plausible on its face." *Id.* at 555, 570; *see also Graham*

3   *v. Noom, Inc.*, 533 F.Supp.3d 823, 830 (N.D. Cal. 2021).

4       The FAC's central allegations are at best mere recitations of claim elements devoid of any

5   actual details.  For example, Plaintiffs do not plead facts about the alleged content of the

6   conversation intercepted.  They also do not explain how any purported interception would involve

7   tapping a telephone or telegraph wire, line, cable, or instrument.  Plaintiffs neither allege how they

8   accessed the site, where they accessed it from, or how an interception occurred beyond vague

9   allegations of a routing "in real time."  The amendments Plaintiffs made to their pleading do not

10   alter this analysis; they simply added a few vague allegations of a "direct line" between Walmart's

11   chat feature and Microsoft without any explanation of what the line is, how it works, and so forth.

12   As "merely conclusory, unwarranted deductions of fact, or unreasonable inferences," the court does

13   not have to accept them as true, as such, the FAC fails under Rule 8(a).  *See, e.g.*, *In re Facebook*

14   *Internet Tracking Litig.*, 140 F.Supp.3d 922, 929 (N.D. Cal. 2015), *overturned on other grounds*,

15   956 F.3d 589 (9th Cir. 2020) ("A complaint which falls short of the Rule 8(a) standard may be

16   dismissed if it fails to state a claim upon which relief can be granted.")

17      **B.**    **Plaintiffs Consented to the Recording of Their Chats by Walmart**

18       Consent is fatal to all of Plaintiffs' claims.  Plaintiffs cannot recover under CIPA (sections

19   631 or 632), the Wiretap Act, or the UCL because they consented to the recording of their alleged

20   chat conversations. For all such claims, consent is dispositive: Sections 631 and 632 (Counts I and

21   II) require Plaintiffs to show Walmart intercepted covered information "without the consent of all

22   parties" to the communication.  Cal. Penal Code §§ 631(a), 632(a).  The Wiretap Act (Count IV)

23   further dictates that "[i]t shall not be unlawful . . . for a person not acting under color of law to

24   intercept a wire, oral, or electronic communication where  . . .  one of the parties to the

25   communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d).  The UCL

26   claim (Count III) is premised solely on the preceding statutes.

27      **Implied consent.** A person who sends written electronic communications (such as chat

28   messages and emails) consents to the recording of those communications by the recipient—as a

matter of logic and as a matter of law—because unlike a telephone conversation, the nature of an electronic communication *requires* that the communication be recorded for transmission to, and reception by, the recipient. *See State v. Lott*, 152 N.H. 436, 441 (2005) ("[l]ike an e-mail message . . . , the recording of the instant message is necessary for the intended recipient of that message to read the message"); *Commw. v. Proetto*, 771 A.2d 823, 829 (Pa. Super. 2001) ("Any reasonably intelligent person, savvy enough to be using the Internet, however, would be aware of the fact that messages are received in a recorded format, by their very nature, and can be downloaded or printed by the party receiving the message. By the very act of sending a communication over the Internet, the party expressly consents to the recording of the message."); *State v. Townsend*, 147 Wash. 2d 666 (2002) (finding that recording of emails was not unlawful because the sender had consented to the recordings). Plaintiffs thus impliedly consented. They admit to initiating a conversation with Walmart by using the Website's chat feature, which is indisputably a written medium, requiring the parties to a conversation to record and send the messages to each other. Thus, by initiating a chat conversation with Walmart, Plaintiffs recorded their portion of the conversation, sent it to Walmart, and received Walmart's portion of the conversation in return. In other words, Plaintiffs consented to Walmart recording their conversation by voluntarily participating in this medium; this incontrovertible fact is thus fatal to their CIPA claims. *Smith v. LoanMe, Inc.* ("*LoanMe*"), 11 Cal.5th 183, 194 n.4 (2021) (noting that some electronic communication media necessitate consent to record by both parties).

Moreover, as discussed above, both Plaintiffs had reason to know their conversations may be recorded on the Website and any allegations that Plaintiffs did not have "a reasonable expectation that [their] communications were being recorded" flies in the face of common sense. (FAC ¶¶ 47, 58.) Plaintiff Byars has described herself in prior litigation as a "tester" with "dual motivations" for entering conversations with Defendants, working to ensure companies "abide by privacy laws." *Byars v. Hot Topic, Inc.*, F.Supp.3d 1051, 1057 (C.D. Cal. 2023) ("*Byars I*"). Plaintiff Valenzuela, similarly, has filed numerous similar claims against websites with chat features. Altogether Plaintiffs Byars and Valenzuela combined have filed over 70 CIPA lawsuits since July 2022, at least 30 of which challenge chatbot features on websites; through filing these

cases, they were undoubtedly aware that their chat features they were using might be subject to monitoring.[2]  Indeed, both Plaintiffs claim they used the chat feature on Walmart's Website *on the same exact day*: July 20, 2022.  And on that same day Plaintiff Valenzuela asserted a claim for wiretapping against a website for chats that occurred prior to July 20, 2022.  *See Valenzuela v. Massage Envy Franchising LLC*, 22STCV23456 (L.A. Super. Ct. July 20, 2022).  Just two days later Plaintiff Byars submitted her own wiretapping class action complaint for chats that occurred prior to July 22, 2022.  *See Byars v. Casper Sleep*, CIVSB2215902 (San Bernardino Super. Ct. July 22, 2022).  Plaintiffs were thus indisputably aware that their chats may be recorded.  And because notice of potential recording by a third party is sufficient to demonstrate consent, by engaging in Walmart's chat function, Plaintiffs consented to recording the conversation. *Griggs-Ryan v. Smith*, 904 F.2d 112, 117 (1st Cir. 1990) (noting that in a wiretapping context, implied consent can be found from surrounding circumstances indicating the party "knowingly agreed to the surveillance.").

     **Explicit consent.**  Plaintiffs also explicitly consented to their communications being recorded by agreeing to Walmart's Privacy Policy.  Plaintiffs concede that "in order to access [Walmart's] chat system, website users must first register for an account on [Walmart's] website." (FAC ¶ 13.) *See also* Wong Decl. Ex. A.  To register an account on the Website, Plaintiffs would have had to agree to Walmart's Privacy Policy, which explicitly outlines "when and with whom [Walmart] share[s] personal information" and "what choices [Website user's] can make about how [Walmart] collect[s], use[s], and share[s] [Website user's] personal information." Wong Decl. Ex. B.  These disclosures also explicitly inform Website user's "personal information" may be shared:

> with service providers that help with [Walmart's] business activities, including … marketing and advertising vendors, and companies that help [Walmart] improve [its] products and services. . . [Walmart] [does] not allow [] service providers to use or share your personal information for any purpose other than providing services on [Walmart's] behalf. Your personal information may be stored and processed by our service providers in the United States or other locations where the service providers or Walmart maintain facilities.

---

[2] *See* App. A.  Federal courts may take judicial notice of orders and proceedings in other courts. *See Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011).

1  *Id.*  The sort of personal information that may be stored, collected, used, or processed includes:

2  "[p]ersonal identifiers, such as name and address; Device and online identifiers and related

3  information, such as telephone number and email address; Internet, application, and network

4  activity, such as cookie IDs and browser visits; … Individual preferences and characteristics, such

5  as inferences related to shopping patterns and behaviors." *Id.*  And such information may be

6  collected from users when they "provide" any information "directly," including when they

7  "[r]equest customer service or contact us." *Id.*  All of these disclosures clearly lay out for the

8  Website user that their activities on Walmart's website, including chat communications, may be

9  recorded or shared. Thus, "[a] reasonable person viewing [these] disclosures would understand that

10  [Walmart] maintains the practices of (a) collecting its users' data from third-party sites and (b) later

11  using the data for advertising purposes," and "[k]nowing authorization of the practice constitutes

12  Plaintiffs' consent." *Smith v. Facebook, Inc.*, 745 F.App'x 8, 8–9 (9th Cir. 2018).  Plaintiffs'

13  agreement to Walmart's policies before using Walmart's chat establishes consent. *See, e.g., Silver*

14  *v. Stripe Inc.*, 2021 WL 3191752, at *4–5 (N.D. Cal. July 28, 2021) (dismissing where policy

15  disclosed defendant may "collect data concerning users' activities across websites"); *Perkins v.*

16  *LinkedIn Corp.*, 53 F.Supp.3d 1190, 1212 (N.D. Cal. 2014) (same as to Wiretap Act claim).  Thus,

17  Plaintiffs' claims fail.

18      **C.**    **Plaintiffs Fail to State a Claim Under Section 631(a)**

19         As laid out by the California Supreme Court, section 631(a) contains three operative clauses

20  covering "three distinct and mutually independent patterns of conduct": (1) "intentional

21  wiretapping"; (2) "willfully attempting to learn the contents or meanings of a communication in

22  transit over a wire"; and (3) "attempting to use or communicate information obtained as a result of

23  engaging in either of the previous two activities." *Tavernetti v. Super. Ct.*, 22 Cal.3d 187, 192

24  (1978).  The fourth clause of section 631(a) allows for an additional basis for liability for anyone

25  "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or

26  permit, or cause to be done any of the" conduct outlined in the three preceding clauses.  Cal. Penal

27  Code § 631(a).  For reasons discussed below, Plaintiffs fail to state a claim under section 631(a).

28

1.      **Plaintiffs' section 631(a) claim fails as a matter of law because Walmart cannot wiretap or eavesdrop on its own communications.**

Plaintiffs' claims that Walmart directly "wiretapped" and "eavesdropped" on its own conversations with Website users who used the chat feature fail as a matter of law because a party to a conversation cannot violate section 631 by recording that conversation. *See, e.g.*, *Byars I*, 656 F.Supp.3d at 1064 ("[p]arties to a conversation cannot eavesdrop on their own conversation") (quoting *Williams*, 2022 WL 17869275, at *2); *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) (confirming that section 631 "has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation"). This is because CIPA aims to protect the people's right of privacy from "new devices and techniques for the purpose of *eavesdropping* upon private communications." Cal. Penal Code § 630 (emphasis added). "Eavesdropping" is "[t]he act of secretly listening to the private conversation *of others* without their consent." *Eavesdropping*, *Black's Law Dictionary* (11th ed. 2019) (emphasis added).

Given this legislative purpose and the statute's text, courts have made clear that under section 631 "only a third party can listen secretly to a private conversation," and that the statute does not cover "the recording of a conversation made by a participant," no matter the means. *Rogers v. Ulrich*, 52 Cal.App.3d 894, 898-99 (1975); *see also Membrila*, 2010 WL 1407274, at *2 (finding that a party to a conversation could not have eavesdropped on its own communications because only a third party listening secretly to a private conversation can do so); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 152 (3d Cir. 2015) (affirming the dismissal of section 631 claims where "the pleadings demonstrate that Google was itself a party to all the electronic transmissions that are the bases of the plaintiffs' wiretapping claims [] [b]ecause § 631 is aimed only at 'eavesdropping, or the secret monitoring of conversations by third parties'"); *cf. LoanMe*, 11 Cal.5th at 194 n.4 ("The circumstances involved with certain kinds of communications may lead to a reasonable inference that a party sending a communication has consented to having it recorded by the intended recipient—recordation would be expected with a facsimile or text transmission, for example.").

Here, Plaintiffs' section 631 claim is premised on Walmart's alleged recording of conversations to which it was a party; but Walmart is not eavesdropping if it chooses to record its own conversations. *Graham v. Noom, Inc.*, 533 F.Supp.3d 823, 831 (N.D. Cal. 2021) (holding that "a party to a communication can record it (and is not eavesdropping when it does)"); *see also Warden*, 99 Cal.App.3d at 811 (same). For example, in *Graham*, the plaintiff alleged a section 631(a) violation against Noom, a web application operator, for creating a recording of its users' interactions with its website (such as their keystrokes, mouse clicks, and page scrolling) through a session replay software. *Graham*, 533 F.Supp.3d at 827. There was no dispute between the parties that Noom and its users were the only parties to the communications. *Id.* at 831. In analyzing liability under section 631(a), the court noted that Noom would not be liable for recording its own communications. *Id.* Thus, the court's analysis focused on whether Noom was liable for aiding and abetting eavesdropping by allowing its session replay vendor to capture data and host it on its servers. Like in *Graham*, Plaintiffs do not properly allege Walmart and its Website visitors were not the only parties to the alleged chat conversations. This concept has been upheld in a series of courts which have found that websites cannot wiretap or eavesdrop on its own communications in its chat features.[3] As a matter of law, Walmart cannot be held liable for allegedly recording those conversations (or creating transcripts of those conversations thereafter).

### 2.  Plaintiffs cannot state a claim for aiding and abetting theory.

Plaintiffs likewise fare no better on their aiding and abetting theory of liability (under the fourth clause of section 631). Plaintiffs claim Walmart also violated section 631(a) by "agree[ing] with, employ[ing], and/or conspir[ing] with Microsoft to intentionally tap the lines of communication between [Walmart] and Plaintiffs." (FAC ¶ 85.) Not so. Walmart cannot have aided and abetted a third party for the same reasons it cannot have eavesdropped on its own chat communications. Section 631 only imposes liability on *third parties* that either wiretap or aid and abet wiretapping, not on first parties who necessarily have access to the underlying

---

[3] *See, e.g.,Licea v. Cinmar, LLC*, 2023 WL 2415592, at *7-9 (C.D. Cal. Mar. 7, 2023); *Licea v. Am. Eagle Outfitters, Inc.*, 2023 WL 2469630, at *6-8 (C.D. Cal. Mar. 7, 2023);*Cody v. Boscov's, Inc.*, 2023 WL 2338302, at *2 (C.D. Cal. Mar. 2, 2023); *Byars I*, 656 F.Supp.3d at 1066; *Pena v. GameStop, Inc.*, 2023 WL 3170047, at *3-5 (S.D. Cal. Apr. 27, 2023). All these decisions dismissed chatbot CIPA claim under the direct-party exception.

communications—including under an aiding and abetting theory of liability. *See Powell v. Union Pac. R.R. Co.*, 864 F.Supp.2d 949, 955-56 (E.D. Cal. 2012) (dismissing, on summary judgment, section 631 aiding and abetting claims against a first party "[g]iven the settled nature of the third-party focus of section 631").

*Powell* is one of the only reported cases to directly address whether a party to a communication can be liable for aiding and abetting a third party's act of wiretapping of the first party's own communication. In that case, the plaintiff alleged that a union officer eavesdropped on plaintiff's phone call with his former union supervisor in violation of section 631. *Id.* at 953. Plaintiff asserted aiding and abetting claims against his former supervisor, who was a party to the communication and permitted the alleged eavesdropping. *Id.* at 954. The plaintiff in *Powell* "contend[ed] that the language of section 631 is clear and a participant should be liable for aiding or conspiring with a third party to enable that party to listen in on the call." *Id.* The defendant argued that "section 631(a) applies to third party actions and therefore, as a party to the call, he cannot be liable as a matter of law." *Id.* Carefully surveying longstanding precedent, the court agreed with defendant, stating:

> Section 631 was aimed at one aspect of the privacy problem—eavesdropping, or the secret monitoring of conversations by third parties. . . . The third party focus of section 631 is confirmed by *Rogers v. Ulrich*, 52 Cal. App. 3d 894 (1975), where the court held that only a third party could violate the section 631 proscription on eavesdropping. . . . Given the settled nature of the third-party focus of section 631, the court declines to adopt plaintiff's alternate reading.

*Id.* at 955-56 (cleaned up).

*Rogers* also unequivocally affirms that section 631 only prohibits eavesdropping by *third parties. See Rogers*, 52 Cal.App.3d at 897-99. In *Rogers*, the defendant recorded his conversation with plaintiff using "a tape recorder jack [that] had recently been installed on [his] telephone by the telephone company." *Id.* at 897. The plaintiff there did not assert the defendant aided and abetted wiretapping by the telephone company because the telephone company provided tools to record the conversation. Like here, this would be absurd.

This interpretation of CIPA mirrors the federal Wiretap Act, which expressly exempts parties to the communication from liability under either a theory of direct or aider and abettor

liability.  18 U.S.C. § 2511(2)(c), (d); *see Brodsky v. Apple Inc.*, 445 F.Supp.3d 110, 127 (N.D. Cal. 2020) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.") (citation omitted).  The federal Wiretap Act also does not allow for *any* aiding and abetting liability, and thus any attempt to impute a broad construction of aiding and abetting liability under CIPA is fundamentally inconsistent with an identical analysis under both statutes.  *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1247 (10th Cir. 2012) (stating that "[a]ny temptation to read the statute as imposing aider-and-abettor liability is overcome by the illuminating statutory history of the civil-liability provision[,]" and concluding that "almost all courts to address the issue have held that [the Wiretap Act] does not impose civil liability on aiders or abettors").  Consistent with *Powell* and the federal Wiretap Act, section 631 should not be drastically expanded to impose liability on parties to the communication.[4]  Courts have repeatedly held that the party exception precludes chat-based CIPA claims against website operators.  *See Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *7-10 (E.D. Cal. Mar. 30, 2023) ("to the extent Plaintiff alleges defendant recorded its own communications with [Plaintiff], Plaintiff fails to state a claim against [Defendant] . . . as a matter of law"), *report and recommendation adopted*, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023); *Esparza v. Lenox Corp.*, 2023 WL 2541352, at *2-3 (N.D. Cal. Mar. 16, 2023) ("Because defendant is party to the communication in question, *defendant's* own recordation of the chat conversation cannot give rise to liability.").

Moreover, the relevant inquiry in determining if a third party is an unlawful eavesdropper is "whether a website owner's usage of third-party recordation software can be considered equivalent to having hired a third party to record."  *Williams*, 2022 WL 17869275, at *3; *see also Graham*, 533 F.Supp.3d at 832.  In *Graham*, the court granted defendant's motion to dismiss because the third-party software employed by the website merely "captures its clients' data, hosts

---

[4] Plaintiffs' section 631 claim cannot be saved by amendment because they cannot allege, in good faith and in compliance with the obligations under Rule 11, that Walmart was not a party to the communication.  And as explained above, there can be no direct or aiding and abetting liability against a party to the communication.  As such, this Court should dismiss Plaintiffs' claim with prejudice.  *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) ("Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility, or where the amended complaint would also be subject to dismissal.") (internal citation omitted).

it on [its] servers, and allows the [website] to analyze their data." *Graham*, 533 F.Supp.3d at 832. The third-party software was essentially acting as a "tape recorder" by allowing Noom to track and store its own data in aid of its own business, and thus the third-party software was an extension of the Noom website and not a third-party eavesdropper. *Id.* at 832-33 (citing *Rogers*, 52 Cal.App.3d at 898). Similarly, here, if anything Microsoft Azure works as a tape recorder that tracks Walmart's *own* data.

Nor do Plaintiffs allege any facts to suggest that any third party is using chat data for its own business purposes, as opposed to storing chat conversations for record keeping or use, which also defeats Plaintiffs' claim. Indeed, in *Williams*, the court dismissed a CIPA claim on the same basis because there were "no facts here to suggest that [the third-party vendor] 'intercepted and used the data itself.'" *Williams*, 2022 WL 17869275, at *3; *see also Valenzuela v. Keurig Green Mountain, Inc.*, 2023 WL 3707181, at *4 (N.D. Cal. May 24, 2023) (finding that "Plaintiff fails to state facts supporting the unnamed third party's 'capability to use its record of the interaction for [another] purpose'").[5] While Plaintiffs allege Microsoft "aggregat[es]" consumer data to determine proper responses to the chat, this is for Walmart's own use to, as Plaintiffs' explicitly allege, "streamline [Walmart's own] automated chat system." (FAC ¶¶ 95-96.)

Recent case law finding third-party liability does not help Plaintiffs, especially in contrast to the majority of chatbot cases dismissing aiding and abetting liability. First, Plaintiffs finds no solace in *Revitch v. New Moosejaw, LLC*, where the court held that parties to communications are not necessarily immune from section 631 liability, *without articulating any reasoned basis for such holding*. 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019). Notably, the *Revitch* court dismissed well-established precedent (as described in *Powell*)—which clearly held that there is no aiding and abetting liability for parties under section 631—merely dropping a *contra* cite without any explanation as to why it declined to follow *Powell*. *Id.* at *2 n.2. Furthermore, as the court pointed out in *Graham*, *Revitch* involved a third party who "mined information from other websites and sold it" and thus was not merely performing functions akin to a tape recorder as in *Rogers*. *Graham*,

---

[5] Notably, this case involved Plaintiff Valenzuela and her claims that another website's chat feature violated CIPA.

1    533 F.Supp.3d at 832.  As such, this Court should decline to follow *Revitch*, which misapplied the

2    case law and incorrectly denied dismissal of a section 631 claim against a first party to a purported

3    communication.

4         So too for *Saleh v. Nike, Inc.*, which relied on *Revitch* to find that plaintiff sufficiently

5    alleged aiding and abetting liability against Nike for allowing its vendor FullStory to record its

6    website user's interactions in real time.  562 F.Supp.3d 503, 519-21 (C.D. Cal. 2021).  There, like

7    *Revitch*, the court failed to address cases interpreting section 631 to exempt first-party liability,

8    only stating that "[t]he text of section 631(a) . . . does not contain any such exception[.]" *Id.* at 520.

9    Moreover, in both *Revitch* and *Saleh*, plaintiffs alleged that *third-party* code was embedded in the

10   websites that redirected communications to the third party.  *Revitch*, 2019 WL 5485330, at *1;

11   *Saleh*, 562 F.Supp.3d. at 521.

12        Plaintiffs' claim is similarly unsupported by *Javier v. Assurance IQ, LLC*, 649 F.Supp.3d

13   891 (N.D. Cal. 2023).  There, the court incorrectly reasoned that section 631 liability should not

14   turn on the "intentions and usage of" the communication at issue by a prospective third party to a

15   communication.  But the Court then admitted that a third party who lacked the "capability to use

16   its record of the interaction for any other purpose (just as a tape recorder has no independent

17   capability to divulge the recording for any other purpose but that of its owner)" was not an

18   eavesdropping third party in violation of section 631.  Unlike *Javier*, there is a complete lack of

19   about to what Microsoft allegedly did with the information for its own use, only Walmart's own

20   actions and potential use.[6]  Thus, even were the Court to adopt the formulation in *Javier* (which it

21   should not), Plaintiffs' claims clearly cannot survive.

### 3.    Plaintiffs fail to state a claim under any of the operative clauses.

23        Notwithstanding the above, Plaintiffs' section 631(a) claim independently fails because

24   they do not allege the required elements under the three operative clauses.

#### a.    Plaintiffs fail to state a claim under the first clause because it does not apply to internet communications.

27        To state a claim under the first clause of section 631(a), Plaintiffs must specifically allege

28   _____

[6] None of these three cases involved chat messages where the user knows that the communication must be recorded for the chat conversation to even occur.

that Walmart unlawfully accessed their communications by intentionally "tap[ping], or ma[king] any unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument." Cal. Penal Code § 631(a); *In re Google Assistant Priv. Litig.*, 457 F.Supp.3d 797, 826 (N.D. Cal. 2020) (holding that CIPA claim under first clause must be dismissed if allegations do not show that the technology at issue "operates using telegraph or telephone wires").  The first clause of section 631(a) applies to "telephonic wiretapping specifically" and "does not apply to the context of the internet." *Williams*, 2022 WL 17869275, at *2.

Nowhere does the FAC allege that Plaintiffs' communications were transmitted over "telephone or telegraph wires, lines, cables, or instruments," as required for the first clause of section 631.  Plaintiffs allege they communicated with Walmart via the chat feature on Walmart's Website, *i.e.*, the Internet (FAC ¶ 30), and Plaintiffs make no allegations as to how they accessed the Website, for example, either through a laptop, home computer, smartphone or other device with Internet access.  Indeed, courts have repeatedly and "overwhelming[ly]" refused to expand the reach of the first clause  to Internet-based communications, including those using smartphones.[7] *See, e.g.*, *Mastel v. Miniclip SA*, 549 F.Supp.3d 1129, 1135 (E.D. Cal. 2021) (refusing to apply the first clause of section 631 where complaint "plainly does not involve any allegations concerning 'telephone wires, lines, or cables,'" and rejecting plaintiff's argument that a smartphone qualified as a "telephone instrument"); *Williams*, 2022 WL 17869275, at *2 (noting that the first clause of section 631 concerns "telephonic wiretapping specifically . . . [and] does not apply to the context of the internet").  Instead, Internet-based communications fall under the second clause of section 631.  *Id.*  Plaintiffs' online communication simply does not fall within the first clause of section 631.  As a result, their claim under the first clause fails as a matter of law.

---

[7] To the extent Plaintiff relies on *Javier v. Assurance IQ LLC*, 2022 WL 1744107 (9th Cir. May 31, 2022) to suggest that the first clause applies to Internet communications (*see* FAC ¶ 28), they are incorrect.  *Javier* assessed defendants' liability under the *second clause* of section 631(a) to which, unlike the first clause, Internet communication does apply.  *See Javier,* 2022 WL 1744107, at *1.

**b.    Plaintiffs fail to state a claim under the first clause because any alleged recording employed by Walmart is not a "machine, instrument, or contrivance."**

Section 631(a) prohibits a person from intentionally wiretapping or making an unauthorized connection "by means of any machine, instrument, or contrivance[.]" Cal. Penal Code § 631(a).  As an initial matter, Plaintiffs fail to allege any "machine, instrument, or contrivance" that Walmart utilized in allegedly wiretapping their communications.  The FAC contains the conclusory allegations that Walmart "created a 'direct line' between its website and Microsoft Azure."  (FAC ¶ 27.)  But Plaintiffs do not offer any explanation as to how the alleged recordings fall into one of the three categories enumerated in the statute.  *See In re Facebook Internet Tracking Litig.*, 140 F.Supp.3d at 937 (finding that plaintiffs have not stated a CIPA claim because they failed to explain how Facebook's cookies fall into one of the three categories enumerated in the statute (*i.e.*, machine, instrument, or contrivance)).  Nor could they—courts interpreting the federal Wiretap Act, which (like CIPA) requires the use of a "device," have held that software, without more, does not constitute a "device" under wiretapping law. *See Crowley v. CyberSource Corp.*, 166 F.Supp.2d 1263, 1269 (N.D. Cal. 2001) (finding that the drive or server on which the e-mail was received does not constitute a "device" under the federal Wiretap Act); *see also Potter v. Havlicek*, 2008 WL 2556723, at *8 (S.D. Ohio June 23, 2008) (finding that software "alone cannot be used to intercept communications" under the federal Wiretap Act and that "[i]t must be installed in a device, such as a computer, to be able to do so.").  Further, Plaintiffs' amendment to add a vague allegations of a "direct line" still does not explain how that "direct line" is a "machine, instrument, or contrivance" as required by section 631.  Plaintiffs' section 631(a) claim independently fails for this reason.

**c.    Plaintiffs fail to state a claim under the second clause because they fail to allege interception of "content" while "in transit."**

Under section 631's second clause, a plaintiff must allege that the defendant "willfully and without the consent of all parties to the communication, or in any unauthorized manner, read[], or attempt[ed] to read, or to learn *the contents* or meaning of any message, report, or communication while the same [was] *in transit* or passing over any wire, line, or cable, or [was] being sent from, or received at any place within [California]."  Cal. Penal Code § 631(a) (emphasis added).  Thus,

to state a wiretapping claim against Walmart, Plaintiff must plausibly allege that Walmart eavesdropped on the "contents" of his communication while that communication was "in transit." Plaintiffs fail to satisfy these elements.[8]

### i.    Plaintiffs have not alleged any "contents."

The second clause of section 631(a) prohibits the "unauthorized access of the 'contents' of any communication." *Brodsky*, 445 F.Supp.3d at 127 (quoting Cal. Penal Code § 631(a) and finding that plaintiffs failed to identify the contents of any communication that Apple allegedly intercepted). The analysis of whether information amounts to "contents" of a communication under CIPA is the same under the federal Wiretap Act. *Id.* "Contents," in both contexts, means "information concerning the substance, purport, or meaning of [a] communication," and does not include record information (e.g., information about habits and identities; e-mail accounts; billing information; and generalized facts) captured generated during that communication. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1104-06 (9th Cir. 2014); *Graham*, 533 F.Supp.3d at 833 (IP addresses, locations, browser types, and operating systems are not "content" for purposes of CIPA); *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at *2 (N.D. Cal. Apr. 8, 2021) (same); *Yoon v. Lululemon USA, Inc.*, 549 F.Supp.3d 1073, 1082-83 (C.D. Cal. 2021) (shipping and billing information, the date and time of the visit, and the duration of the visit are also not "content" for purposes of CIPA).

Here, Plaintiffs allege only that they asked "questions" and vaguely allege "PII" was gathered. (FAC ¶¶ 37, 39, 51, 53.) Plaintiffs do not allege that they shared any information in their questions that constitute contents under the CIPA.[9] *Id.* These threadbare allegations thus do not pass muster under Rule 12(b)(6). *See In re Facebook Internet Tracking Litig.*, 140 F.Supp.3d at 937 (granting motion to dismiss where plaintiffs only included "generalized facts" that did not adequately allege that "Facebook obtained the contents of a communication attributable to any of them"); *Hammerling v. Google LLC*, 615 F.Supp.3d 1069, 1093 (N.D. Cal. 2022) (granting motion

---

[8] Moreover, while Plaintiffs allege they are California residents, they fail to allege that any of the communications with the Website occurred while they were in the state. Because they failed to allege a crucial element of section 631, the section 631 claim independently fails on this ground.
[9] Walmart raised this same issue of lack of factual allegations regarding the contents of Plaintiffs' chat communications in its first motion to dismiss. Nevertheless, Plaintiffs' FAC does not allege any further details regarding the actual information shared in these communications.

Cooley LLP
Attorneys at Law
San Diego

DEFENDANT'S MOTION TO DISMISS FAC
3:23-CV-04315-AGT

to dismiss where "information about personal habits and identities" did not constitute "content" of a communication, such that plaintiffs could not allege that Google had intercepted "content" under the statute).

ii.    **Plaintiffs have not alleged any interception "in transit."**

Plaintiffs fail to sufficiently plead that their communications were intercepted while "in transit." Cal. Penal Code § 631(a). When examining the "in transit" requirement, courts have interpreted section 631 to be coextensive with the federal Wiretap Act. *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F.Supp.3d 1204, 1228 n.9 (C.D. Cal. 2017) (interpreting Wiretap Act and noting that courts have generally construed the CIPA "as coextensive with the Wiretap Act"); *see also* 18 U.S.C. §§ 2510 *et seq*. For a communication to be "intercepted" under the Wiretap Act, "it must be acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (adopting a "narrow" definition of "intercept" under the Wiretap Act, *i.e.*, "acquisition contemporaneous with transmission"). Thus, the communication must be "stop[ped], seize[d], or interrupt[ed] in progress or course *before arrival*." *Id*. (emphasis added) (quoting *Webster's Ninth New Collegiate Dictionary* 630 (1985)); *see also NovelPoster v. Javitch Canfield Grp.*, 140 F.Supp.3d 938, 951-52 (N.D. Cal. 2014) (discussing that defendants' actions must "halt the transmission of the messages to their intended recipients," not access from storage after receipt); *Mireskandari v. Daily Mail & Gen. Tr. PLC*, 2013 WL 12129559, at *10 n.44 (C.D. Cal. July 30, 2013) (finding plaintiff failed to plausibly allege a CIPA claim under the second clause where complaint failed "plausibly to plead that NSC intercepted any electronic communication while it was in transit; at most, he alleges the illegal disclosure of data NSC held in storage").

Here, the FAC is silent as to the nature and timing of any alleged interception as well as the mechanism in which the interception happened in "real time." (FAC ¶ 23.) Merely invoking the words "real time" does not suffice. *See Rodriguez v. Google LLC* 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) (dismissing section 631 claim despite repeated allegation of "intercept" in amended complaint). Plaintiffs claim Walmart "redirected the inputs made by users, in real time, from [Walmart's] website to Microsoft Azure through" a "direct line." (FAC ¶ 23.) These are not

proper factual allegations, and instead vaguely recite statutory elements. *See Mastel*, 549 F.Supp.3d at 1136 (dismissing claim where there were "no allegations in the complaint that reasonably give rise to the inference that [the defendant] ever read or learned the contents of a communication while . . . in transit, or in the process of being sent or received"). Second, Plaintiffs alleged Microsoft "stor[es] and compil[es]" user data for "Defendant's own use." (FAC ¶¶ 24-25)  But this too fails to plead a plausible claim of interception. *Rodriguez*, 2022 WL 214552, at *2 (dismissing complaint where alleged theory "was essentially one of logging and then transmitting," as "[u]sing the word 'intercept' repeatedly is simply not enough without the addition of specific facts" plausible to state a claim under section 631(a)).

As such, Plaintiffs' bare allegations do not state a claim. *See Rosenow v. Facebook, Inc.*, 2020 WL 1984062, at *7 (S.D. Cal. Apr. 27, 2020) (granting a motion to dismiss because the complaint's allegation that the recording occurred "during transit" was "conclusory"); *Quigley v. Yelp, Inc.*, 2018 WL 7204066, at *4 (N.D. Cal. Jan. 22, 2018) (dismissing section 631(a) claim because the plaintiff "has not alleged facts giving rise to an inference that his communications were intercepted while 'in transit' as required under section 631 of the California Penal Code"); *see also Vizio, Inc.*, 238 F.Supp.3d at 1228 (dismissing wiretap claim because the "conclusory allegation that Vizio intercepted their electronic communications 'during transmission'" was only supported by "vague allegations about how Vizio's data collection occurs 'in real-time'") (citation omitted).

### d.    Plaintiffs fail to state a claim under the third clause because their claims under the first two clauses fail.

Without pleading a claim under the first two clauses of section 631(a), Plaintiffs cannot successfully bring a claim under the third clause.  Section 631(a)'s third clause prohibits anyone from "attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti*, 22 Cal.3d at 192.  Thus, Plaintiffs "must establish that the information at issue . . . was obtained through a violation of the first or second clauses." *In re Google Assistant*, 457 F.Supp.3d at 827 (interpreting *Tavernetti* and finding that plaintiffs' failure to plead defendants' violation of the first or second clause of section 631 meant they also failed to plead defendants' violation of the third clause).  Because Plaintiffs failed to state a claim under

section 631(a)'s first or second clauses for reasons stated above, their claim that Walmart violated section 631(a) under the third clause fails as a matter of law.

### D.     Plaintiffs Fail To State A Claim Under Section 632 Because Plaintiffs' Allege No Confidential Communication

CIPA's Section 632 prohibits "intentionally and without the consent of all parties to a confidential communication, us[ing] an electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication." Cal. Penal Code § 632(a).  As mentioned above, Plaintiffs consented to any recording of communications and thus this claim fails entirely for that reason.  Further, Plaintiffs' claim under section 632 also fails because they allege no eavesdropping upon or recording of a "confidential communication." A communication is confidential when circumstances reasonably reflect, "that any party to the communication desires it to be confined to the parties thereto" and does not cover "circumstance[s] in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." Cal. Penal Code § 632(c).  The key question "whether [Plaintiffs] had an objectively reasonable expectation that the conversation would not be divulged to anyone else." *Deteresa v. Am. Broad. Cos., Inc*., 121 F.3d 460, 465 (9th Cir. 1997). Walmart's privacy policy expressly notes that communications might be divulged to third parties.  Further, the Northern District of California courts have previously noted that "California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of Section 632, because such communications can easily be shared by, for instance, the recipient(s) of the communications." *Campbell v. Facebook Inc*., 77 F.Supp.3d 836, 839 (N.D. Cal. 2014) *see also Swarts v. Home Depot, Inc*., 2023 WL 5615453, at *8 (N.D. Cal. Aug. 30, 2023) (finding no reasonable expectation that internet chat communications would be confidential).

For example, in *People v. Nakai*, the court found that chat dialogues were not confidential communications. 183 Cal.App.4th 499, 518 (2010).  This was for several reasons, including that "[the Website] warns users that chat dialogues can be 'archive[d], print[ed], and save[d].' . . . defendant was communicating online with a person whom he did not know . . . . Computers that are connected to the internet are capable of instantaneously sending writings and photographs to

thousands of people." *Id.* Similarly, here, Walmart's Privacy Policy explicitly notes that Walmart "may share the categories of personal information . . . with certain categories of third parties." Wong Decl. Ex. B. Thus, Plaintiffs' section 632 claim fails.

### E.    Plaintiffs Fail To State A Claim Under the Federal Wiretap Act

As mentioned above, The Wiretap Act does not impose liability "where one of the parties to the communication has given prior consent." 18 U.S.C. § 2511(2)(d). Walmart, a party to the alleged chat communications, consented to the communications possibly being recorded and thus Plaintiffs' Wiretap Act claim fails. *See Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021); *In re Yahoo Mail Litig.*, 7 F.Supp.3d 1016, 1026 (N.D. Cal. 2014) ("[T]he consent of one party is a complete defense to a Wiretap Act claim.").

Further, because the analysis for a violation of the CIPA is the same as the federal Wiretap Act, the same arguments asserted above as to CIPA apply equally here. *Brodsky*, 445 F.Supp.3d at 127. Along with prior consent, Plaintiffs' Wiretap Act claim fails because: the Act does not apply to internet communications; Plaintiffs have not alleged any contents; and Plaintiffs have not alleged any interception "in transit." *See supra* [ ].

### F.    Plaintiffs' UCL Claim Fails

The UCL prohibits unlawful, unfair, or fraudulent business practices and "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Plaintiffs' "unlawful" and "unfair" claims rely upon the alleged violations of the CIPA and Wiretap Act as alleged in the FAC. (FAC ¶¶ 115-18.) Because Plaintiffs' other claims individually fail, the UCL claim cannot be supported. *See Kellman v. Spokeo, Inc.*, 599 F.Supp.3d 877, 896 n.5 (N.D. Cal. 2022) (unlawful claim "rises or falls" with predicate violations); *Davis v. HSBC Bank Nev., NA*, 691 F.3d 1152, 1168 (9th Cir. 2012) (UCL claims dismissed when predicative violation also fails).

#### 1.    Plaintiffs Do Not Allege Economic Injury

The UCL requires actual economic injury, that is Plaintiffs must allege a loss of "money or property." Cal. Bus. & Prof. Code § 17204. But, Plaintiffs do not allege any facts that could satisfy this requirement. Plaintiffs do not claim they paid fees to use the chatbot. In fact, use of the chatbot

is free, and Plaintiffs incurred any monetary or property loss as mandated by the UCL. Courts regularly dismiss claims under the UCL where plaintiffs "do not allege that they paid fees for [a defendant's] services." *In re Facebook Priv. Litig.*, 791 F.Supp.2d 705, 715, 715 (N.D. Cal. 2011); *see also, e.g.*, *Rodriguez*, 2021 WL 2026726, at *8; *In re iPhone App. Litig.*, 2011 WL 4403963, at *10, 14 (N.D. Cal. Sept. 20, 2011); *Thompson v. Home Depot, Inc.*, 2007 WL 2746603, at *3 (S.D. Cal. Sept. 18, 2007) (filling out a form with "personal identification" does not constitute money or property under the UCL, even if used for marketing purposes).

Reminiscent of *In re Facebook Privacy Litigation*, the most that Plaintiffs have attempted to assert is that they shared "personally identifiable information." 791 F.Supp.2d at 714; FAC ¶ 18 ("personal identifying information"). In *Facebook*, Plaintiffs asserted sharing personally identifiable information that was shared with third-party advertisers, but this could not maintain a UCL claim because that information did not constitute property. Similarly, the information that Plaintiffs shared in this case does not constitute property.

Nor have Plaintiffs alleged that Walmart took their money or that they are entitled to an ownership interest in Walmart's allegedly improper profits—additional prerequisites for this claim. *See In re Yahoo! Inc. Consumer Data Sec. Breach Litig.*, 2017 WL 3727318, at *31 (N.D. Cal. Aug. 30, 2017); *Bradshaw v. City of Los Angeles*, 2023 WL 3400634, at *18-19 (C.D. Cal. Mar. 10, 2023). Because Plaintiffs have not asserted the necessary harm required under the UCL, their UCL "unfair" and "unlawful" claims fail.

## 2. Plaintiffs Have An Adequate Remedy at Law

Plaintiffs also "must establish that [they] lack[] an adequate remedy at law before securing equitable restitution for past harm under the UCL." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). This claim is foreclosed because Plaintiffs are seeking monetary damages for precisely the same conduct, demonstrating that restitution "is not a true alternative theory of relief but rather is duplicative of those legal causes of action." *Loo v. Toyota Motor Sales, USA, Inc.*, 2019 WL 7753448, at *13 (C.D. Cal. Dec. 20, 2019); *see also, e.g.*, *Zapata Fonseca v. Goya Foods Inc.*, 2016 WL 4698942, at *7-8 (N.D. Cal. Sept. 8, 2016). Absent allegations that a plaintiff lacks an adequate remedy at law, a federal court may not even consider equitable remedies. *See*

*Sonner*, 971 F.3d at 841, 844 (reasoning that a federal court cannot improperly expand its equitable authority and "must apply traditional equitable principles before awarding restitution under the UCL"). Courts have applied *Sonner* at the pleading stage and dismissed claims where the plaintiff has failed to allege an inadequate remedy at law. *See, e.g., Watkins v. MGA Entm't, Inc.,* 550 F.Supp.3d 815, 837 (N.D. Cal. 2021) (concluding that the reasoning from *Sonner* "applies at the pleading stage," and concluding that a claim for equitable relief under the UCL fails as a matter of law); *Nacarino v. Chobani*, LLC, 2021 WL 3487117, at *12–13 (N.D. Cal. Aug. 9, 2021) (dismissing "equitable restitution or disgorgement" claim under *Sonner*). Because of this pleading deficiency, Plaintiffs' UCL claim must be dismissed.

### a.      Plaintiffs Do Not Properly Allege That Walmart Engaged in Unlawful or Unfair Conduct

Finally, Plaintiffs' UCL claim rests on allegations that Walmart engaged in "unlawful" and "unfair" conduct.  (FAC ¶¶ 115-18.)  The "unlawful" allegation reprises Plaintiffs' CIPA and federal Wiretap Act claims and thus as mentioned above, fails because those claims themselves fail. (FAC ¶ 117.) The "unfair" allegation is based on the same underlying facts as the wiretapping allegations. (FAC ¶ 118.) so it likewise fails with the CIPA and Wiretap Act claims.

This claim also fails the UCL's "balancing" and "tethering" tests. The "balancing" test is unsatisfied because plaintiffs do not identify any conduct by Walmart that is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Herskowitz v. Apple Inc*., 940 F.Supp.2d 1131, 1145-46 (N.D. Cal. 2013) (citation omitted).  Plaintiffs consented to any recording and Walmart fully disclosed its conduct.  Further, Plaintiffs have not alleged any facts to show their alleged harm outweighs the utility of Walmart's conduct.  Plaintiffs fail the "tethering" test because their conclusory assertion that Walmart "undermines or violates the intent of the consumer protection laws alleged," does not plausibly establish a "close nexus" with a violation of the law. *Hodsdon v. Mars, Inc*., 891 F.3d 857, 866 (9th Cir. 2018); (FAC ¶ 118).

### G.      Plaintiffs Lack Article III Standing to Assert Any Injunctive Relief

Article III of the Constitution requires courts to adjudicate only actual cases or controversies. U.S. Const. art. III, § 2; *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir.

2004). In order to establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2203 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 185 (2000) (internal citations omitted).  Plaintiffs are not entitled any injunctive relief because they were informed of and consented to any allege recording of their chat communications and further did not plead to intend to use Walmart's platform "in the future." *Graham*, 533 F.Supp.3d at 836.  Lastly, they cannot seek injunctive relief because they know of the alleged recording.  Thus, Plaintiffs' claims for injunctive relief must be dismissed.

## V.    **CONCLUSION**

For the foregoing reasons, Plaintiffs fail to state any claim.  Walmart respectfully requests that Plaintiffs' FAC be dismissed with prejudice because the defects cannot be remedied as shown by Plaintiffs' attempted amendments.

Dated: December 6, 2023                    COOLEY LLP


By: */s/ Kyle C. Wong*
     Kyle C. Wong

Attorneys for Defendant
*Wal-Mart.com, USA, LLC*

# Appendix A

| Parties | Case Information |
|---------|------------------|
| Arisha Byars; Sonya Valenzuela<br>v.<br>Wal-Mart.Com USA LLC | Northern District of California, Case No. 3:23cv4315 |
| Arisha Byars; Sonya Valenzuela, individually and on behalf of all others similarly situated<br>v.<br>Wal-Mart.com USA LLC; Does | San Mateo County Superior Court, Case No. 23-CIV-03331 |
| Arisha Byars and Miguel Licea, individually and on behalf of all others similarly situated<br>v.<br>Ascena Retail Group Inc.; Does | San Bernardino County Superior Court, Case No. CIVSB2315039 |
| Arisha Byars<br>v.<br>Epicor Software Corporation dba www.epicor.com | Los Angeles Superior Court, Case No. 23STCV14418 |
| Arisha Byars, individually and on behalf of all others similarly situated<br>v.<br>Cole Haan, LLC dba www.colehann.com | Los Angeles Superior Court, Case No. 23STCV12292 |
| Arisha Byars, individually and on behalf of all others similarly situated<br>v.<br>Sephora USA Inc, dba www.sephora.com; Does | Central District of California, Case No. 5:23cv883 |
| Arisha Byars, and on behalf of all others similarly situated v. Arzz International, Inc., dba www.Schutz-Shoes.com | Los Angeles Superior Court, Case No. 23STCV10924 |
| Arisha Byars, and on behalf of all others similarly situated<br>v.<br>Theory LLC, dba Theory.com | Los Angeles Superior Court, Case No. 23STCV10368 |
| Arisha Byars, individually, and on behalf of other members of the general public similarly situated<br>v.<br>Macy's Inc. | Central District of California, Case No. 5:23cv456 |
| Arisha Byars, individually and on behalf of all others similarly situated<br>v.<br>Whirlpool Corporation; Does | Central District of California, Case No. 5:22cv2030 |
| Arisha Byars, individually and on behalf of all others similarly situated<br>v.<br>Casper Sleep Inc.; Does | Central District of California, Case No. 5:22cv1801 |

1

| | |
|---|---|
| Arisha Byars<br>v.<br>Hot Topic Inc.; Does; | Central District of California, Case No. 5:22cv1652 |
| Arisha Byars<br>v.<br>Sterling Jewelers, Inc.; Does | Central District of California, Case No. 5:22cv1456 |
| Arisha Byars, individually and on behalf of all others similarly situated<br>v.<br>Rite Aid Corp.; Does | Central District of California, Case No. 5:22cv1377 |
| Arisha Byars<br>v.<br>The Goodyear Tire and Rubber Co.; Does | Central District of California, Case No. 5:22cv1358 |
| Arisha Byars, individually and on behalf of all others similarly situated<br>v.<br>Casper Sleep Inc.; Does | San Bernardino County Superior Court, Case No. CIVSB2215902 |

| Parties | Case Information |
|---|---|
| Sonya Valenzuela, individually and on behalf of all others similarly situated<br>v.<br>Micron Technology Inc., dba www.crucial.com | Central District of California, Case No. 2:23cv7058 |
| Arisha Byars; Sonya Valenzuela<br>v.<br>Wal-Mart.Com USA LLC | Northern District of California, Case No. 3:23cv4315 |
| Sonya Valenzuela<br>v.<br>Faherty Brand LLC | Central District of California, Case No. 8:23cv1574 |
| Sonya Valenzuela<br>v.<br>Outdoor Voices, Inc. dba Outdoorvoices.com | Los Angeles Superior Court, Case No. 23STCV19526 |
| Sonya Valenzuela<br>v.<br>2Talk LLC dba 2Talk.com | Los Angeles Superior Court, Case No. 23STCV19523 |
| Sonya Valenzuela<br>v.<br>Aerospike, Inc. dba www.aerospike.com | Los Angeles Superior Court, Case No. 23STCV19290 |
| Sonya Valenzuela<br>v.<br>World Wildlife Fund Inc, dba www.worldwildlife.org | Central District of California, Case No. 2:23cv6112 |
| Sonya Valenzuela<br>v.<br>Air Hydro Power LLC | Los Angeles Superior Court, Case No. 23STCV17590 |
| Sonya Valenzuela<br>v.<br>Jivox Corporation dba www.jivox.com | Los Angeles Superior Court, Case No. 23STCV17589 |
| Sonya Valenzuela, individually and on behalf of all others similarly situated<br>v.<br>Micron Technology, Inc. dba www.crucial.com | Los Angeles Superior Court, Case No. 23STCV17448 |
| Sonya Valenzuela, and on behalf of all others similarly situated<br>v.<br>Telesign Corporation dba www.telesign.com | Los Angeles Superior Court, Case No. 23STCV17434 |
| Sonya Valenzuela<br>v.<br>Tecovas, Inc. | Los Angeles Superior Court, Case No. 23STCV17318 |

| | |
|---|---|
| Arisha Byars; Sonya Valenzuela, individually and on behalf of all others similarly situated<br>v.<br>Wal-Mart.com USA LLC; Does | San Mateo Superior Court, Case No. 23-CIV-03331 |
| Sonya Valenzuela, individually and on behalf of all others similarly situated<br>v.<br>Faherty Brand LLC, dba Fahertybrand.com | Orange County Superior Court, Case No. 30-2023-01337235-CUMT-CXC |
| Sonya Valenzuela<br>v.<br>Lamar Media Corp., dba Lamar.com | Orange County Superior Court, Case No. 30-2023-01336536-CUCR-CJC |
| Sonya Valenzuela, individually and on behalf of all others similarly situated<br>v.<br>Delivery.com LLC, dba Delivery.com | Orange County Superior Court, Case No. 30-2023-01336839-CUMT-CXC |
| Sonya Valenzuela, individually and on behalf of all others similarly situated<br>v.<br>Homage LLC, dba Homage.com | Orange County Superior Court, Case No. 30-2023-01336826-CUMT-CXC |
| Sonya Valenzuela<br>v.<br>Ensinger, Inc. dba Ensingerplastics.com | Los Angeles Superior Court, Case No. 23STCV16268 |
| Sonya Valenzuela<br>v.<br>Stonex Group Inc. dba Stonex.com | Los Angeles Superior Court, Case No. 23STCV16084 |
| Sonya Valenzuela<br>v.<br>Intersystems Corporation, dba Intersystems.com | Orange County Superior Court, Case No. 30-2023-01335008-CUCR-CJC |
| Sonya Valenzuela<br>v.<br>Alixpartners, LLP dba Alixpartners.com | Los Angeles Superior Court, Case No. 23STCV15686 |
| Sonya Valenzuela<br>v.<br>Wakefern Food Corp., dba www.Shoprite.com | Los Angeles Superior Court, Case No. 23STCV15220 |
| Sonya Valenzuela, individually and on behalf of all others similarly situated<br>v.<br>Build-A-Bear Workshop Inc. | Central District of California, Case No. 2:23cv5162 |
| Sonya Valenzuela<br>v.<br>Livechat Inc., dba Livechat.com | Orange County Superior Court, Case No. 30-2023-01333056-CUCR-CJC |

| | |
|---|---|
| Sonya Valenzuela<br>v.<br>World Wildlife Fund, Inc. dba<br>www.worldwildlife.ort | Los Angeles Superior Court, Case No.<br>23STCV14554 |
| Sonya Valenzuela, individually and on behalf<br>of all others similarly situated<br>v.<br>Super Bright LEDS Inc., dba<br>SuperBrightLEDS.com | Central District of California, Case No.<br>5:23cv1148 |
| Sonya Valenzuela, and on behalf of all others<br>similarly situated<br>v.<br>Alexander Wang LLC, dba<br>www.alexanderwang.com | Los Angeles Superior Court, Case No.<br>23STCV12422 6/2/2023 |
| Sonya Valenzuela, individually and on behalf<br>of all others similarly situated<br>v.<br>Jane Marketplace LLC | Northern District of California, Case No.<br>4:23cv2543 |
| Sonya Valenzuela, and on behalf of all others<br>similarly situated<br>v.<br>Electronic Commodities Exchange, L.P., dba<br>www. Ritani.com | Los Angeles Superior Court, Case No.<br>23STCV10477 |
| Sonya Valenzuela, individually and on behalf<br>of others similarly situated<br>v.<br>As Beauty LLC dba Lauragellar.com | Los Angeles Superior Court, Case No.<br>23STCV10403 |
| Sonya Valenzuela, and on behalf of all others<br>similarly situated<br>v.<br>C.C. Filson Co., dba Filson.com | Central District of California, Case No.<br>2:23cv3387 |
| Sonya Valenzuela<br>v.<br>Loews Hotels, LLC dba Loewshotels.com | Los Angeles Superior Court, Case No.<br>23STCV07546 |
| Sonya Valenzuela<br>v.<br>Noble House Hotels & Resorts, LP dba<br>Laubergedelmar.com | Los Angeles Superior Court, Case No.<br>23STCV07524 |
| Sonya Valenzuela<br>v.<br>Sia International Trading Limited | Los Angeles Superior Court, Case No.<br>23STCV07626 |
| Sonya Valenzuela, and on behalf of all others<br>similarly situated<br>v.<br>C.C. Filson Co., dba Filson.com | Los Angeles Superior Court, Case No.<br>23STCV06952 |

| Sonya Valenzuela<br>v.<br>Fathead LLC, aka Fathead.com; Does | Central District of California, Case No. 2:23cv1960 |
|---|---|
| Sonya Valenzuela<br>v.<br>AMICA Mutual Insurance Company | Los Angeles Superior Court, Case No. 23STCV04849 |
| Sonya Valenzuela<br>v.<br>Bedding Pros LLC dba US-Mattress.com | Los Angeles Superior Court, Case No. 23STCV02945 |
| Sonya Valenzuela<br>v.<br>Fathead LLC dba Fathead.com | Los Angeles Superior Court, Case No. 23STCV02969 |
| Sonya Valenzuela<br>v.<br>Givenchy Corporation dba Givenchy.com | Los Angeles Superior Court, Case No. 23STCV01298 |
| Sonya Valenzuela<br>v.<br>Farfetch.com US, LLC dba Pucci.com | Los Angeles Superior Court, Case No. 23STCV00831 |
| Sonya Valenzuela, individually and on behalf of all others similarly situated<br>v.<br>RugsUSA LLC; Does | Central District of California, Case No. 8:23cv24 |
| Sonya Valenzuela, individually and on behalf of all others similarly situated<br>v.<br>Hims & Hers Health Inc., dba ForHims.com; Does | Southern District of California, Case No. 3:23cv11 |
| Sonya Valenzuela, individually and on behalf of all others similarly situated<br>v.<br>Pierre Fabre USA Inc., dba Kloraneusa.com; Does | Southern District of California, Case No. 3:22cv2079 |
| Sonya Valenzuela<br>v.<br>Bootbarn Inc.; Bootbarn.com | Los Angeles Superior Court, Case No. 22STCV40497 |
| Sonya Valenzuela, individually and on behalf of all others similarly situated<br>v.<br>Keurig Green Mountain, Inc.; Does | Northern District of California, Case No. 3:22cv9042 |
| Sonya Valenzuela, individually and on behalf of all others similarly situated<br>v.<br>Engage3 Inc., dba Engage3.com; Does | Orange County Superior Court, Case No. 30-2022-01297903-CUMT-CXC |

| | |
|---|---|
| Sonya Valenzuela, individually and on behalf of all others similarly situated v. Kaspersky Lab Inc.; Does | Central District of California, Case No. 2:22cv9157 |
| Sonya Valenzuela, individually and on behalf of all others similarly situated v. RugUSA LLC, dba Rugusa.com; Does | Orange County Superior Court, Case No. 30-2022-01294507-CUMT-CXC |
| Sonya Valenzuela, individually and on behalf of all others similarly situated v. Hims & Hers Health Inc., dba ForHims.com; Does | San Diego County Superior Court, Case No. 37-2022-47422-CUMT-CTL |
| Sonya Valenzuela, individually and on behalf of all others similarly situated v. Pierre Fabre USA Inc., dba Kloraneusa.com; Does | San Diego County Superior Court, Case No. 37-2022-47487-CUMT-CTL |
| Sonya Valenzuela, individually and on behalf of all others similarly situated v. Dermacare LLC dba Bluechew.com; Does | San Diego County Superior Court. Case No. 37-2022-47405-CUMT-CTL |
| Sonya Valenzuela, individually and on behalf of himself and all others similarly situated v. CNO Services LLC | Central District of California, Case No. 5:22cv2084 |
| Sonya Valenzuela, individually and on behalf of all others similarly situated v. West Marine Products Inc. | Central District of California, Case No. 5:22cv2082 |
| Sonya Valenzuela, individually and on behalf of all others similarly situated v. VF Outdoor LLC, dba Smartwool.com; Does | San Diego County Superior Court, Case No. 37-2022-46954-CU-MT-CTL |
| Sonya Valenzuela v. Pear Sports LLC | Riverside County Superior Court, Case No. CVRI2204529 |
| Sonya Valenzuela v. Carvana, LLC | Riverside County Superior Court, Case No. CVRI2204530 |
| Sonya Valenzuela, individually and on behalf of all others similarly situated v. CNO Services LLC; Does | Riverside County Superior Court, Case No. CVRI2204525 |

| | |
|---|---|
| Sonya Valenzuela, individually and on behalf of all others similarly situated<br>v.<br>West Marine Products Inc.; Does | Riverside County Superior Court, Case No. CVRI2204524 |
| Sonya Valenzuela, Individually and on Behalf of All Others Similarly Situated,<br>v.<br>Papa Murphy's International LLC; Does | Central District of California, Case No. 5:22cv1788 |
| Sonya Valenzuela<br>v.<br>Papa Murphy's International, LLC; Does | Central District of California, Case No. 5:22cv1789 |
| Sonya Valenzuela<br>v.<br>HEB Grocery Co. LP | San Antonio Bexar County District Court, Case No. 2022CI19077 |
| Jose Licea; Sonya Valenzuela<br>v.<br>Cimar, LLC; Does | Central District of California, Case No. 2:22cv6454 |
| Sonya Valenzuela<br>v.<br>The Kroger Co.; Does | Central District of California, Case No. 2:22cv6382 |
| Sonya Valenzuela, individually and behalf of all others similarly situated<br>v.<br>Bj's Wholesale Club Inc.; Does | Central District of California, Case No. 2:22cv6378 |
| Sonya Valenzuela, individually and on behalf of all others similarly situated<br>v.<br>AIG Direct Insurance Services Inc.; Does | Central District of California, Case No. 5:22cv1561 |
| Sonya Valenzuela, individually and on behalf of all others similarly situated<br>v.<br>Aflac Incorporated; Does | Central District of California, Case No. 2:22cv6348 |
| Sonya Valenzuela<br>v.<br>Nationwide Mutual Insurance Co.; Does | Central District of California, Case No. 2:22cv6177 |
| Sonya Valenzuela<br>v.<br>Michael Kors (USA) Inc. | Central District of California, Case No. 2:22cv5902 |
| Sonya Valenzuela, individually and on behalf of all others similarly situated<br>v.<br>Massage Envy Franchising LLC; Does | Central District of California, Case No. 2:22cv5817 |
| Sonya Valenzuela,<br>v.<br>Kaspersky Lab, Inc. | Los Angeles Superior Court, Case No. 22STCV26119 |

| | |
|---|---|
| Sonya Valenzuela, and on behalf of all others similarly situated<br>v.<br>The Kroger Co. | Los Angeles Superior Court, Case No. 22STCV25119 |
| Sonya Valenzuela<br>v.<br>M.A.C. Cosmetics Inc.; Does | Central District of California, Case No. 5:22cv1360 |
| Sonya Valenzuela<br>v.<br>Under Armour, Inc. | Los Angeles Superior Court, Case No. 22STCV24206 |
| Sonya Valenzuela, individually and on behalf of all others similarly situated<br>v.<br>Nationwide Mutual Insurance Co. | Los Angeles Superior Court, Case No. 22STCV24136 |
| Sonya Valenzuela<br>v.<br>AFLAC Incorporated | Los Angeles Superior Court, Case No. 22STCV23742 |
| Sonya Valenzuela<br>v.<br>Michael Kors (USA) Inc. | Los Angeles Superior Court, Case No. 22STCV23635 |
| Sonya Valenzuela, and on behalf of all others similarly situated<br>v.<br>Massage Envy Franchising, LLC | Los Angeles Superior Court, Case No. 22STCV23456 |